# CHARLESTON

## BIAS *v.* ATKINSON.

Submitted February 18, 1908.    Decided December 9, 1908.

1. CORPORATION—*Agreement—Stockholder's Representation.*

A. claiming to be the owner of more than sixty *per centum* of the capital stock of the M. L. & I. Co., a corporation, entered into a written option with B. to sell to him, his heirs or assigns, in consideration of $25,000 cash all the property, rights and privileges of said corporation, the sale to "cover all property of said corporation of whatever name or nature, other than book accounts and cash on hand;" and agreeing upon the acceptance of said option by B. or

his heirs or assigns to call a proper meeting of the stockholders of said corporation and cause a proper resolution to be entered directing the sale of said property to said B., his heirs or assigns. *Held:*

I. That without an allegation that A. represented that in making said contract he was representing and acting for all the stockholders of said corporation, the declaration is bad on demurrer.

II. That such a contract, made by a holder of sixty *per centum* or more of the stock and without the knowledge or consent of the minority stockholders, is void as against public policy. (pp. 490, 493.)

Error to Circuit Court, Mingo County.

Action by B. Randolph Bias against G. W. Atkinson. Judgment for plaintiff and defendant appeals.

*Reversed and Remanded.*

SHEPPARD, GOODYKOONTZ & SCHERR, for defendant in error.

MARCUM & MARCUM and SANDERS & CROCKETT, for plaintiff in error.

MCWHORTER, JUDGE:

B. Randolph Bias filed his declaration in *assumpsit* in the circuit court of Mingo county against G. W. Atkinson laying his damages at $10,000 and founding his action upon the following written contract:

"THIS INDENTURE, Made this the Twenty-seventh (27th) day of June, 1906, between GEORGE W. ATKINSON, of Bluefield, West Virginia, party of the first part, and B. RANDOLPH BIAS, of Williamson, West Virginia, party of the second part.

"WITNESSETH AS FOLLOWS:

"WHEREAS, The party of the first part is the owner and holder of more than sixty (60) per cent of the capital stock of the Mingo Light and Ice Company, a corporation organized under West Virginia laws; and

"WHEREAS, The said party of the first part, as such stockholder is empowered by law to vote, at a proper stockholders meeting, the sale of all the property, rights and privileges of the said corporation, at a fair and reasonable price; and

"WHEREAS, The party of the first part considers

that Twenty-five Thousand ($25,000.00) Dollars would be a fair and reasonable price for said property; and,

"WHEREAS, The party of the second part is desirous of considering the purchase of the property of said corporation for himself or his assigns, at the price aforesaid.

"NOW, THEREFORE, In consideration of the premises, and One Dollar ($1.00) in hand paid unto the party of the first part by the party of the second part, the receipt whereof is hereby acknowledged, he, the said party of the first part, doth give and grant unto the party of the second part, his heirs or assigns, the exclusive right and privilege of purchasing from said corporation, on or before the first day of September, 1906, except that the party of the first part is free to make *bona fide* sale to any person not procured or introduced to negotiations by the party of the second part or through his efforts, all its property, rights, franchises and privileges of whatsoever name and nature, at the price of Twenty-five Thousand ($25,000.00) cash, the sale to include, among other things, the following machinery, equipment and property: (Here follow the the various items of machinery, &c.)

"Covering all property of said corporation of whatsoever name or nature, other than book accounts and cash on hand.

"The party of the first part covenants and agrees with the party of the second part that whenever the party of the second part, his heirs or assigns, shall signify his or their intention to exercise the option hereby granted, then that he will cause a proper meeting of the stockholders of said corporation to be held, and will cause to be entered a proper resolution directing the sale of said property to the party of the first part, his heirs or assigns, at the price above mentioned, and will cause to be convened the Board of Directors of said corporation, and the passing of a proper resolution by said Board of Directors, directing the execution of proper instruments of writing, so as to assure the title of said property unto the said party of the second part, his heirs or assigns, and that said property shall be conveyed by a general warranty deed, and free from all liens and encumbrances, of whatsoever name and nature.

"In case the party of the second part may be able to sell said property, rights and privileges, at a price exceeding

Twenty-five Thousand ($25,000.00) Dollars, the said party of the second part shall be protected in respect to said profit; and in case any conveyance shall be authorized or directed to the purchaser for a greater sum of money *that* Twenty-five Thousand ($25,000.00) Dollars, then the difference between the price to be paid by the purchaser and the sum of Twenty-five Thousand ($25,000.00) Dollars, to be paid unto said company, shall be paid by the party of the first part, or the said company, unto the said party of the second part.

"In case the party of the second part, or those with whom he may be dealing for the purchase of said property, shall, on the first day of September, 1906, be undecided as to whether they will purchase said property at the price fixed, then the party of the first part agrees to extend this agreement and option for an additional period not to exceed thirty (30) days; and for the privilege of such extension, said Bias shall pay unto the party of the first part the sum of Five ($5.00) Dollars for each day of such extension. But whenever the said Bias shall notify the party of the first part that he desires to end such extension, the same shall immediately lapse and be ended, and the said Bias shall pay unto the party of the first part whatever may be due him on account of such extension, at the rate of Five ($5.00) Dollars per day.

"IN TESTIMONY WHEREOF, The parties hereto have hereunto affixed their signatures and seals, as of the day and year first above written.

> "G. W. Atkinson.   [Seal]
> "B. Randolph Bias.   [Seal]"

Which contract was acknowledged by the parties thereto on the 29th day of June, 1906.

The declaration alleges the sale by the plaintiff of the option while it was still alive and in force and the assignment thereof to the Citizen's Ice, Light and Coal Company who agreed to pay the cash price of $25,000 to the said defendant and to transfer to plaintiff fifty shares of stock of the par value of $100, the cash payment to be made and the transfer of the said shares to plaintiff whenever the purchaser should acquire the property and holdings mentioned in the option; of which sale, transfer and assignment defendant had notice. That plaintiff demanded of him compliance with his part of the contract, but defendant failed and refused to do so; but

on the contrary said defendant declared said contract was void and that he had already sold his stock in the Mingo Light and Ice Company to his brother, and that he no longer held the majority of said stock and stated that he refused to undertake to carry out said agreement in any respect.

At the March term, 1907, of said court the defendant appeared by counsel and demurred to plaintiff's declaration which being argued was overruled by the court. The defendant then entered the general plea of *non assumpsit.* At the September term, 1907, the case was tried before a jury and a verdict rendered in favor of the plaintiff, assessing his damages at $5,000. The defendant moved to set aside the verdict on the grounds that it was contrary to the law and the evidence. On the 18th of September, 1907, the court overruled the motion and entered judgment upon said verdict. In the trial of the case the defendant took two bills of exceptions to various rulings of the court which were made a part of the record. The defendant obtained a writ of error assigning several errors, the first of which is the overruling of defendant's demurrer to plaintiff's declaration. If this assignment is well taken it will be unnecessary to notice the further assignments.

It is not contended that the contract sued upon in this action could be enforced against the corporation. An individual stockholder has no authority to sell the property of the corporation. Under the common-law neither the directors nor a majority of the stockholders have power to sell all the corporate property as against the dissent of even a single stockholder unless the corporation was in a failing condition. See 2 Cook on Corporations, section 670. But our statute has changed the common-law in this respect. Section 2497, Code 1906, provides that, "On the affirmative vote, in person or by proxy, of the holders of at least sixty *per centum* of the outstanding stock of the corporation, such corporation may sell, transfer or assign in good faith, all of its property and assets; but a smaller majority shall not have the right to make such a sale, transfer or assignment. But no sale, transfer or assignment of property and assets of such corporation shall be made, except at a general or special meeting of the stockholders, called in the manner provided by law. But nothing in this section shall be so construed as to conflict with any of

the provisions of section fifty-six of chapter fifty-three of the code."

It will be observed that this can only be done by the sixty *per centum* mentioned at a general or special meeting of the stockholders called in the manner provided by law. It is not alleged in the declaration that the defendant was acting with the consent or in behalf of the other stockholders or that they had notice of his contract to sell the property of the corporation. It plainly appears from the contract itself that the defendant was acting alone for himself and binding himself thereby in advance to vote in a certain way on the proposition for the sale of the whole property and assets of the corporation. His fiduciary relations to the corporation made it his duty to participate in any meeting untrammeled by any such contract and to vote on any proposition that might arise in the transaction of the business of the corporation for the best interests of all the stockholders, and the plaintiff as well as the defendant knew from the contract itself that the defendant was relying alone upon the right given him by the statute as the owner of sixty *per centum* or more of the stock. In *Guernsey* v. *Cook*, 120 Mass. 501, it was held: "A contract, by which a shareholder in a corporation, in consideration of the purchase of a part of his stock at a price named, agrees to secure to the purchaser the office of treasurer of the corporation, with a fixed salary, and in case of his removal to repurchase the stock at par, is void as against public policy, and as a fraud on the other members of the corporation, in the absence of evidence that the transaction was not for private benefit of the shareholder, or that it was consented to by the other members of the corporation."

The effect of the contract here sued upon was to influence the defendant in the matter of selling the corporation's property which affected the private rights of others who were entitled to his best judgment in the interest of the whole corporation, his relation being that of trust and confidence which required him to look only to the best interest of the whole uninfluenced by private gains. In *West* v. *Camden*, 135 U. S. 507, it is held: "An agreement by a director of a corporation to keep another person permanently in place as an officer of the corporation, is void as against public policy, even though there was not to be any direct private gain to the

promisor." In *Wilbur* v. *Stoepel*, 46 N. W. (Mich.) 724, the
first point of the syllabus is as follows: "Defendants, who
owned the majority of the stock, and were directors of
a corporation, without the consent of the other stockholder,
made a contract with plaintiff by which in consideration of
his becoming manager of the corporation at a certain salary,
and of his purchasing stock, they agreed to repurchase
his stock on certain terms, if at the end of two years he con-
cluded to withdraw from the company, or if before that time
the company should dispense with his services. *Held*, that
the contract was void as against public policy, even if made
in good faith, because it was inconsistent with defendants'
duties to the corporation."

In the case of *Curtis* v. *Watson*, 25 At. 478 (Vt.) is relied
upon by the plaintiff as authority for holding the defendant
personally liable on a contract made by him for the sale of
the entire property of a corporation. That was an action for
damages brought against the defendants who represented
themselves as the owners of a majority of the stock of
the corporation whose property they were proposing to sell
and who also represented that they were authorized by other
stockholders to sell the entire property of the corporation.
For the breach of this contract the action was brought. The
demurrer to the declaration was overruled by the lower court
and affirmed by the appellate court. The decision of the
supreme court was based upon the doctrine that one may con-
tract to convey at a future time property of which he was not
the owner at the time of the contract. The question of the
validity of the contract was not raised in that case. The al-
legations of the declaration that the defendants were the own-
ers of a majority of the stock and that they represented the
other stockholders and were authorized by them to make the
sale, had to be taken as true on demurrer. That being true,
they were in no wise practicing any fraud or wrong upon the
minority stockholders and they represented that they were
authorized by such stockholders to make the sale. Not so in
case at bar. It is not alleged that the defendant represented
the minority stockholders or that he was authorized to sell
the property of the corporation, but by the contract bound
himself to call a meeting of the stockholders and to vote his
stock, which was at least sixty *per centum* of the whole, not-

withstanding it might be made to appear that the property was worth much·more and could be sold at a much larger price to the great advantage of the corporation. No stockholder, or set of stockholders, should be permitted·by contract in advance to bind themselves to vote in any particular way on any proposition touching the interests of the corporation they represent unless with the knowledge and consent of all the stockholders. In 9 Cyc. 481 it is said: "It is not easy to give a precise definition of public policy. It is perhaps correct to say that public policy is that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be designated, as it sometimes has been, the policy of the law or public policy in relation to the administration of the law. Where a contract belongs to this class, it will be declared void; although in the particular instance no injury to the public good may have resulted. In other words its validity is determined by its general tendency at the time it is made, and if this is opposed to the interests of the public it will be invalid, even though the intent of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract and not its actual injury in a particular instance."

Section 2497, above quoted, provides the only way the "sale, transfer or assignment of property and assets" of a corporation can be made. Owing to the relation of confidence and trust existing between the stockholders, no one or more stockholders less than all can make a valid contract to sell the corporate property at a stipulated sum, binding themselves in advance to call a meeting and therein to vote for said sale at such sum. It is such in 9 Cyc. 470, in speaking of fraudulent agreements and contracts: "Another class of agreements which are deemed to be illegal and void because of their constituting or tending to constitute a fraud upon third persons are those whose object or tendency is to constitute a fraud or breach of trust or breach of duty on the part of the person who stands in a fiduciary or confidential relation, as agents and employees, attorneys, auctioneers, trustees, executors or administrators, guardians, promoters, officers, and majority stockholders of corporations, partners and others engaged in a joint enterprise or undertaking or jointly

interested in a matter or jointly liable in an action, public officers or employees and any other persons occupying. a fiduciary or confidential position.''

For the reasons stated herein the judgment will be reversed, the verdict set aside and the demurrer to the declaration sustained and the case remanded to the circuit court of. Mingo county with leave to plaintiff to amend his declaration if he be so advised, and for a new trial to be had therein.

*Reversed and Remanded.* ·