# CHARLESTON.

KENNEDY v. MERCHANTS & MINERS BANK et al.

Decided May 3, 1910.

1. APPEAL AND ERROR—*Review—Questions for Jury.*
    In trial of right to property levied on, conflicting facts and circumstances in relation to fraud vitiating claimant's title as against creditors are properly determinable by the jury and their verdict upon such facts and circumstances will not be disturbed.

2. CORPORATIONS—*Sale of Corporation Property.*
    · When all the stockholders of a corporation informally but plainly authorize a sale of all the corporate property, a transfer thereof on behalf of the corporation in pursuance of the authority so given is the corporate act and passes title.

Error to Circuit Court, Fayette County.

Action by Bettie Kennedy against the Merchants' & Miners' Bank and others. Judgment for plaintiff, and defendants bring error.

*Affirmed.*

*Hubard & Lee* and *Payne & Hamilton,* for plaintiffs in error.

*Osenton & McPeak* and *Charles E. Hogg,* for defendant in error.

ROBINSON, PRESIDENT:

Executions were levied on personal property as belonging to the Allegheny Bottling Company, a corporation. These writs were issued on judgments against that company. G. L. Hooper was its president and general manager. While suits were pending in which the judgments were obtained he, acting ostensibly for the corporation, sold and transferred to his sister-in-law, Bettie Kennedy, all the property that it owned. When the officer took charge of the property under the levies she sought to establish her ownership thereto by petition pursuant to the statute. The justice found that she was not the owner; but on appeal a trial by jury in the circuit court resulted in verdict

and judgment for her. The execution creditors have obtained the writ of error we must now consider.

It was personal property only that the corporation owned and Hooper sold. He executed and delivered to his sister-in-law a written bill of sale for it. That writing is made by him as president and general manager of the corporation. It plainly purports to have been made on behalf of the corporation by its authority duly given. The consideration for the sale was the surrender of two notes made by Hooper to his sister-in-law, for borrowed money. These parties assert that the corporation in fact assumed the repayment of this money, and that the corporation actually did repay it by the transfer of the property in satisfaction of the debt. After the sale was consummated, Hooper was employed by the new owner and took charge of the property for her.

The ownership of the claimant is attacked upon two grounds. It is submitted that the sale was a fraudulent and invalid one as far as creditors were concerned—that the transfer was made for the manifest purpose of defeating creditors. Then, it is insisted that the sale of the property was not by corporate action and that therefore the whole transaction was ineffectual to pass title to the corporate property.

The question of fraud is foreclosed by the determination of the jury. It was properly submitted to them and plainly called to their attention by an instruction. They saw the witnesses and judged of their credibility. There is nothing in the evidence so admittedly contrary to their finding as to call for a disturbance of that finding. But there is evidence sufficient to uphold the verdict in this particular. The purchaser testified that she had no knowledge whatever of the claims of creditors other than herself, that she bought the property in good faith, and that she paid a valid consideration therefor. In all this she is not directly contradicted. Other facts and circumstances in the case tended to overthrow her claims in these particulars, but the jury evidently found that these facts and circumstances did not overthrow her direct evidence. It was peculiarly their province so to find if they believed the evidence warranted the conclusion.

It is true that the sale was not made by formal corporate action. The corporation appears to have had practically no

existence but in name. Though it was duly chartered there was
no formal .and regular corporate organization. The stock be-
longed 'wholly to two persons, it is proved. Hooper owned two-
thirds of it, and another party, Blizzard, owned the other third.
The wives of these two and a brother of Hooper were originally
merely nominal stockholders, for the purposes of incorporation.
The corporation simply succeeded a partnership composed of
Hooper and Blizzard, which had been carrying on the identical
business under the same .name that the corporation assumed.
No more in fact was done than to make the name a corporate
one instead of a partnership one. Hooper continued as in the
partnership to exercise the power to do everything about the
business which he saw fit without regard to formal corporate
action. He was indeed the mind of the corporation. He was
the majority stockholder, the sole director, and the only officer.

Was the sale by corporate action? The contract evidencing
it is executed ostensibly by the corporation. The officer who
executed the contract professedly in its behalf was the ap-
propriate one to execute such a contract in behalf of the cor-
poration. The law, under. these circumstances, presumes a
precedent authorization regularly and rightfully made, if the
corporation itself had the power to make such contract. 10
Cyc. 1003. Certainly a corporation legally may make a sale
of its property, such as is evidenced by this writing. So the
written contract or bill of sale is clearly *prima facie* evidence of
the corporate act which it evidences. But it is shown pretty
clearly that no meeting of the stockholders was formally held
at which the execution of this 'writing could have been author-
ized. Thus its regularity and efficiency is attacked. For, under
our law action by the stockholders is essential to the authoriza-
tion of a sale of the property and assets of a corporation.

It was proved before the jury that Hooper and Blizzard
owned all the stock of the corporation and. that they both as-
sented that the sale should be made. As to these facts parol
evidence was admissible. *Handley* v. *Stutz,* 139 U. S. 417. The
corporation did not necessarily cease to exist because the number
of stockholders became reduced to a number less than five.
Code 1906, chapter 53, section 17. It had not been dissolved.
Then, was the joint assent and authorization of all the stock-
holders, obtained other than at a meeting regularly called as

provided by law, a sufficient authority for the sale and the execution of the writing in that behalf? We are of the opinion that it was.

Our statute expressly empowers the stockholders of a corporation to authorize a sale of its property. In this case the corporate property was sold by the authority of the stockholders. The irregularity of the corporate organization—the failure to maintain a board of directors or whatever it may be—does not annihilate this power, if the corporation actually exists. If there are stockholders they may authorize a sale, provided they do so by an observance of the true purposes of the statute. The language of that statute is: "On the affirmative vote, in person or by proxy, of the holders of at least sixty per centum of the outstanding stock of the corporation, such corporation may sell, transfer or assign in good faith, all of its property and assets; but a smaller majority shall not have the right to make such a sale, transfer or assignment. But no sale, transfer or assignment of property and assets of such corporation shall be made, except at a general or special meeting of the stockholders, called in the manner provided by law." Code 1906, chapter 54, section 83. Does this law demand that in all cases there shall be a formal meeting, called in the manner therein stated? If such meeting is called in the manner provided, the sale may be authorized by a vote of the holders of at least sixty per cent. of the stock; but is such formally called meeting essential to the sale when all the stockholders clearly assent that it be made by the corporation and in truth authorize it? May not all the stockholders voluntarily assemble, express their assent to a sale, and direct that some officer or agent execute the same on behalf of the corporation? This statute is to be construed in the light of its evident purpose. It directs a meeting, called in the manner provided by law, so that each and every stockholder may have the opportunity to express his views and cast his vote upon the question of a proposed sale, and so that it may thus be ascertained fairly that the holders of at least sixty per cent. of the stock do in fact authorize a sale. Its object is the protection of the minority stockholder. It exists for his protection. By it he is given the opportunity to be heard by argument and vote. The formal call of a meeting is directed in order that each and every stock-

holder shall have a say. Only for that purpose does the statute require a formally called meeting. But when all the stockholders informally but plainly authorize a sale of all the corporate property on its behalf, as we must assume the jury found was true in this case, then the very object of the statute does not demand its technical application. In the case before us, all the stockholders had an opportunity to be heard on the question of a sale and all of them assented to it, we may say from the verdict. That is even more than the statute demands. It does demand the opportunity for all to be heard, but not the assent of all. If the statute had been technically followed, the same result would have been reached. Its spirit has not been violated. The statute undoubtedly says that the stockholders may authorize a sale. When they all do so in a manner not formally in accord with the directions of the statute but just as clearly and as fairly as it requires, why should not the act be sustained as a valid one by the corporation?

We have heretofore held that a stockholder who owns more than sixty per cent. of the stock of a corporation cannot, in justice to public policy, bindingly contract to sell all the corporate property before a meeting and vote as required by law. *Bias* v. *Atkinson,* 64 W. Va. 486. But even by the qualifications expressed in that decision it appears that such contract may be made if the contracting stockholder is acting for all the other stockholders and by their consent.

Let it be distinctly observed that we do not hold that stockholders have such title to the corporate property that they may pass it by a sale to which all of them assent. They do not own the property. The title is in the corporation. But we do hold that assent by all the stockholders, clearly and fairly expressed, may constitute corporate action for the sale of all the corporate property and assets and may authorize the corporate title to be passed. 7 Thompson on Corporations, sections 8402, 8403; Clark on Corporations, 9; *Cunningham* v. *German Ins. Co.,* 101 Fed. 977.

If the sale in question was one in good faith and one which every stockholder authorized after an opportunity to be heard, it was legally made by the corporation itself. And if there was evidence upon which the jury could find these conditional facts to be true, the verdict in this particular was also justified.

Clearly there was before the jury sufficient evidence upon which to base a finding of these facts. The facts which we must assume that the jury found, and the law applicable thereto, characterize the sale as an honest and valid one between the corporation and the purchaser. Though its effect may have been to prefer a creditor of the corporation, under the finding of facts by the jury it is nevertheless valid as between the parties to pass title to the property. How far it may have been affected by suit in equity under the statute relating to preferences we cannot here properly inquire.

No error for which the judgment should be reversed is perceived. An affirmance, therefore, will be ordered.

*Affirmed.*