# CHARLESTON.

LATHROP *v.* COLUMBIA COLLIERIES CO. *et al.*

Submitted March 16, 1910.          Decided December 5, 1911.

1. VENDOR AND PURCHASER—*Tender of Price—Defect in Title.*

    Where a vendor contracts to convey real estate free of defects of title, the vendee need not tender the purchase money on the day stipulated if the vendor is not then able to pass good title. (p. 62).

2. SPECIFIC PERFORMANCE—*Bill—Demurrer.*

    Though a bill for the specific performance of a contract for the sale of land shows the title to be in a third party, it cannot be assumed on demurrer that the statute of frauds will prevent the enforcement of the contract, when the contract, exhibited with the bill, declares that the vendor owns and controls the land. (p. 62).

3. SAME.

    If one contracts to sell the land of another, representing that he has power to cause a conveyance thereof, a bill brought by the vendee for the specific performance of the contract is not insufficient on demurrer merely because the vendor may not have title to the land. (p. 63).

4. EVIDENCE—*Presumptions—Corporate Contract—Execution—Authority.*

    When a corporate contract is executed ostensibly by the corporation, and the officer executing the contract, professedly on behalf of the corporation, is the appropriate one to execute such a contract on its behalf, the law presumes a precedent authorization regularly and rightly made. (p. 63).

5. VENDOR AND PURCHASER—*Validity—Description of Property—Indefiniteness.*

    On demurrer to a bill for specific performance, the following description in a contract for the sale of land is not void for uncertainty: "All the real estate of the Columbia Collieries Company situated in the County of McDowell, State of West Virginia, on the south fork of Tug River, and on the ridge between the north and south forks of Tug River, containing fourteen hundred and twenty-six (1426) acres more or less." (p. 63).

6. SAME—*Contracts—Objections to Title—Effect.*

    If a vendor has contracted to convey land free of defects of

title, objections to the title by the vendee cannot absolve the vendor from the obligation. (p. 63).

7.  SPECIFIC PERFORMANCE—*Outstanding Title—Rights of Purchaser.*
     When a vendor contracts to sell a larger interest in real estate than he can make title to, a court of equity may compel him at the suit of the vendee to convey such estate or interests as he may have in the premises contracted to be sold, with an abate-ment of the consideration. (p. 64).

8.  'SAME—*Contracts—Mutuality.*
     A contract for the sale of land which so binds both parties that either one may compel the other to perform, cannot be held void for want of mutuality. (p. 65).

9.  SAME—*Transfer of Stocks and Bonds.*
     Equity will compel the specific performance of a contract for the transfer of stock and bonds when they have a peculiar value to the party demanding the transfer. (p. 65).

Appeal from Circuit Court, McDowell County.

Bill by W. A. Lathrop against Columbia Collieries Company and another. Decree for defendants, and plaintiff appeals.

*Reversed and Remanded.*

*Phlegar & Powell* and *George W. St. Clair,* for appellant.

*Anderson, Strother & Hughes* and *Vinson & Thompson,* for appellees.

ROBINSON, JUDGE:

Lathrop sued the Columbia Collieries Company and the Southwest Virginia Trust Company for the specific performance of a contract between him and the Trust Company. On de-murrer, the court dismissed his bill as insufficient. He has appealed. .

We deem it essential to recite some material portions of the contract:

"Witnesseth: That the party of the first part owns and con-trols the property hereinafter described and covenants and agrees, in consideration of one thousand dollars ($1000) paid by the party of the second part to the party of the first part this day, the receipt of which is hereby acknowledged, to con-vey and transfer the said property and perform the conditions

of this contract as hereinafter set forth, provided the said
W. A. Lathrop elects to purchase the same on or before the
20th day of February, 1908, in accordance with the provision
of this contract, which election is to be made in writing and
delivered to the party of the first part or mailed to it, address-
ing same to Roanoke, Virginia; and therefore, hereby covenants
and agrees as follows:

"FIRST: That, for and in consideration of the sum of
EIGHTY-FIVE THOUSAND DOLLARS ($85,000) to be
paid as hereinafter provided, the party of the first part covenants
and agrees:

"1.   To cause to be conveyed in fee simple to the party of the
second part, or his assigns, all of the real estate of the Colum-
bia Collieries Company situated in the County of McDowell,
State of West Virginia, of the south fork of Tug River, and
on the ridge between the north and south forks of Tug River,
containing fourteen hundred and twenty-six (1426) acres more
or less, free of incumbrances and defects of title; and the deed
of conveyance shall contain a covenant of general warranty of
title, or,

"2.   Will transfer to the party of the second part or his
assigns all of the certificates of shares of the capital stock of
the said Columbia Collieries Company, together with all the
bonds authorized by said company to be issued, which said issue
of bonds amounts to the aggregate sum of one hundred thousand
dollars and is secured by a deed of trust on said real estate,
which deed of trust is of record in the Clerk's office of McDowell
County, West Virginia, or

"3.   Will cause said land to be conveyed as hereinabove pro-
vided and transfer to be made of said stock and bonds as above
set forth, for the consideration above mentioned, which con-
veyance or transfer shall be made on or before the 27th day
of February, 1908, on or before which date it is agreed between
the parties hereto this contract shall be closed by the execution
of the papers and payment of cash and notes as herein pro-
vided.

"SECOND: It is further covenanted and agreed on the part
of the party of the first part that the party of the second part
shall have until the 27th day of February, 1908 to examine the

title to said lands and survey the same before accepting a deed to the said real estate, or a transfer of the stock and bonds; and the party of the second part agrees that he will, on or before the 27th day of February, 1908 make such examination as he desires and will then advise the party of the first part if said titles are satisfactory and if so, will also notify said party of the first part in writing whether he will require a deed to be executed in accordance with the terms of this contract as hereinabove set forth, or the delivery of the stock and bonds as above set forth, or will close said transaction by accepting both a deed and the transfer of said stock and bonds as hereinabove provided.

"THIRD: In the event the party of the second part shall ascertain that there exists such substantial defects in the title which cannot be remedied within a reasonable time, then the obligation of this contract on the party of the second part shall cease and be at an end, but in the event the defect reported, if any such is reported, is cured by the party of the first part within a reasonable time, then the obligation of this contract shall remain unimpaired and the terms hereof shall be carried out as soon thereafter as said defect may be cured."

The bill shows that plaintiff duly notified the Trust Company prior to February 20, 1908, of his election to take the property under the contract, and that on or before February 27, 1908, he further notified the Trust Company of certain defects of title to be cured and of his election to take both a conveyance of the land and a transfer of the stock and bonds. Other substantial averments of the bill are: That plaintiff did all the contract required him to do, but that the Trust Company has failed and refused, though demanded, to carry out the contract on its part; that the defects of title are such as can be cured; that plaintiff is willing to take the part of the property to which the defects of title do not pertain, with proper abatement of the purchase price; and that he is able and willing to take all the property and to make payment therefor as stipulated, whenever the Trust Company shall tender him a deed for the property and the stock and bonds in compliance with the contract.

Now, what other showing should plaintiff make to demand performance of the contract? He avers full compliance on his

part and a failure to comply on the part of the Trust Company. He shows that he has done all that the contract requires him to do until the other party shall tender the conveyance, stock and bonds for which the contract calls. *Prima facie* his case is a good one. Of course an answer to the bill may make a very different case. At present, however, we can look only to the face of the bill.

Viewing the contract as a whole, and giving it reasonable meaning, we cannot hold that a tender of the installment of purchase money and of the purchase money notes on or before February 27, 1908, was essential to the right of the plaintiff to demand the property, in view of the defects of title which he pointed out. Time in this particular was not of the essence of the contract, for another clause expressly contemplates further time in the event substantial defects of title are found. It must be observed that the contract expressly calls for a conveyance of the property in fee simple, free of incumbrances and defects in title. The obligation to furnish such conveyance is on the Trust Company. It assumed that obligation for a consideration. Until it performs the obligation, plaintiff is not in default for failure to tender the purchase money and notes. Indeed that would be true were time of the essence of the contract. The bill substantially avers that the Trust Company on February 27, 1908, was not then able to pass good title because of defects of title. The holding in *Gas Co.* v. *Elder,* 54 W. Va. 335, is in point: "Though in a contract for the sale of land a provision for payment on a day be made of the essence of the contract, yet if the vendor is not then able to pass a good title, equity will relieve against a failure to pay on the day, and enforce performance at the instance of the vendee." Since this principle is true where time is of the essence of the contract, certainly it is more applicable where, as in this case, time is not of the essence of the contract.

Defendants insist that the statute of frauds prohibits the enforcement of the contract. How do we know that it does, on this demurrer? Though the Trust Company contracted to convey the property of another, we do not know that the statute of frauds will prevent that conveyance. An answer in the case may show that it will, but the fact does not appear from the bill and exhibits to which the demurrer applies.

Indeed we may say that the bill and exhibits show the contrary. The Trust Company declares in the contract that it "owns and controls" the property. How then does the statute of frauds interfere? The Trust Company, it seems, has the property legally bound to it. Besides the bill avers that the Trust Company owns all the Stock of the Columbia Collieries Company. That being true, it is completely within the power of the Trust Company to cause the conveyance which plaintiff demands. *Kennedy* v. *Merchants & Miners Bank,* 67 W. Va. 475.

The argument is made that the Columbia Collieries Company cannot be compelled to convey its land without corporate action on its part, nor until a contract has been signed by that corporation charging it to convey. We grant that this is true; but the fact does not argue against the sufficiency of the bill. The suit is to compel a conveyance by the Trust Company of land which it represented it had power to convey, though the property be that of another. If the land of that other party is not within the legal control of the Trust Company so that it can be conveyed as contracted, let that fact be shown by answer. As the case now presents the matter, the Columbia Collieries Company is in some way legally bound to the Trust Company so that the latter corporation may cause a conveyance of the property of the other. Fry on Specific Performance, (5th ed.) sec. 994; *Browne* v. *Warner,* 11 Ves. Jun. 412; 36 Cyc. 574, 575.

The contract is executed in the corporate name of the Trust Company, by its president, the corporate seal is affixed, and the same is duly attested by the secretary of the corporation. Yet on this demurrer it is said that the bill does not aver authority in the president to make the contract. This point is untenable. The contract is *prima facie* proof of the corporate act which it evidences. That which we said in *Kennedy* v. *Bank, supra,* is applicable here: "The contract * * * is executed ostensibly by the corporation. The officer who executed the contract professedly in its behalf was the appropriate one to execute such a contract in behalf of the corporation. The law, under these circumstances, presumes a precedent authorization regularly and rightfully made, if the corporation itself had the power to make such contract."

Another point urged is that the description of the property is void for uncertainty. The description recited in a contract

is sufficient. *Mundy* v *Vawter,* 3 Grat. 518; *Vanmeter's Ex'rs.*
v. *Vanmeter,* 3 Grat. 148. The property can surely be located
and identified by it. This description is to be distinguished
from such as was involved in *Crawford* v. *Workman,* 64 W. Va.
10. It is definite in that it calls for *all.* Extrinsic evidence
may be used to apply a contract of the character of this one to
its subject matter. *Kight* v. *Kight,* 64 W. Va. 519; *Hervey* v.
*Edens,* 69 Tex. 420. Usually the records of the county readily
disclose, with definite particulars, all the real estate owned by
one therein.

Then it is said that the option was not accepted in a manner
that is binding on either the optionee or the optionor. The
argument that it was not so accepted is based on a construction
of the contract which we cannot approve. This construction is,
that plaintiff could only elect to purchase under the contract
provided he found the titles satisfactory to him. Since he did
not find the title satisfactory, his election or acceptance amount-
ed to nothing. In other words, if the titles were not satisfactory
to plaintiff, the contract was at an end, unless the Trust Com-
pany cured the defects in a reasonable time, as provided in
the third main clause of the contract. But clear import of the
contract is not to this effect. The mere presence of defects of
title did not end the contract. On the other hand the Trust
Company contracted to convey free of defects of title, and plain-
tiff may give the notices of election and insist upon such a
conveyance, as he has done. The contract plainly contemplates
the removal of defects by the Trust Company, if plaintiff elects
to take the property and defects are found. Plaintiff may
insist upon having all that was promised him. True, a pro-
vision gave him the right to end the obligation he had assumed,
in case substantial defects were not cured in a reasonable time;
but that provision of the contract is one in his own behalf.
The Trust Company cannot seek relief under it. Plaintiff is
not asking to take advantage of it. He comes, virtually saying
that he waives that provision, and demands that the defects of
title be cured, or that the part of the property not affected by
defects of title be conveyed to him, with a proper abatement of
price. Reasonable interpretation of the contract gives him the
right so to demand.

Further, the defendants say the bill shows that the title to

the land is outstanding in third parties. The bill does show that there are defects of title in this particular as to some parcels of the land. The bill, however, avers that all the defects can be cured. Besides, plaintiff expresses a willingness to take all the property not affected by adverse title. Let us here use the words of Lord Eldon: "If a man, having partial interests in an estate, chooses to enter into a contract, representing it, and agreeing to sell it, as his own, it is not competent to him afterwards to say, though he has valuable interests, he has not the entirety; and therefore the purchaser shall not have the benefit of his contract. For the purpose of this jurisdiction, the person contracting under those circumstances, is bound by the assertion in his contract; and, if the vendee chooses to take as much as he can have, he has a right to that, and to an abatement." *Mortlock* v. *Buller,* 10 Ves. 315.

Defendants also say that the contract lacks mutuality, so that both parties are not bound. A perusal of the contract must convince one of the contrary view. Both the vendor and vendee are bound. After plaintiff gave the notice of acceptance, the Trust Company could make him take the property if he refused. It is insisted that he could release himself from the contract by merely saying that the titles were not satisfactory. That is by no means a proper interpretation of the agreement. If good title, free of defects and incumbrances, were tendered him in a reasonable time, a court of equity would compel him to perform. There is mutuality of remedy. Both parties are so bound that either may be compelled to perform, unless some default of the other releases him.

The bill is not bad wherein it calls for specific performance in relation to the stock and bonds. Equity will compel the specific performance of a contract for the transfer of stock and bonds when they have a peculiar value. It would seem that the stock and bonds of the Columbia Collieries Company have a peculiar value to plaintiff in relation to the title of the land which he seeks to obtain. They are really muniments of title which are peculiarly valuable to the owner of the land. They cannot be obtained in the market. The Trust Company has all of them. The usual reason against allowing specific performance in relation to stock and bonds cannot apply under such circumstances. *Hogg* v. *McGuffin,* 67 W. Va. 456.

The court erred in dismissing the bill on demurrer. The decree will be reversed, the demurrer to the bill overruled, and the cause remanded to be further proceeded in .

*Reversed and Remanded.*