# CHARLESTON.

## T. JUD McBEE v. S. S. DEUSENBERRY

### (No. 5178)

Submitted May 12, 1925.  Decided May 19, 1925.

1. FRAUD—MISREPRESENTATION—*Reliance Thereon.*

    One to whom a representation has been made as an inducement to enter into a contract has the right to rely upon it as true *quoad* the maker, without making inquiry or investigation to determine the truth thereof.  (p. 181.)

2. SAME—*False Representation by Vendor of Price Paid for Real Estate When Relied Upon to Injury of Vendee Grounds for Rescission of Contract of Sale.*

    The false representation of a material fact, constituting an inducement to a contract for the purchase of real estate, on which the purchaser had the right to rely, and upon which he did rely, is always ground for a rescission of the contract by a court of equity.  Therefore, a false representation by a vendor of the price paid by him for the property, when relied upon by the vendee, who is thereby misled to his injury, is sufficient to warrant a rescission of the contract of sale by a court of equity, upon application therefor by the vendee. (p. 177.)

3. FACTS—*Finding of Circuit Court Conclusive on Appeal.*

    The rule established by the repeated decisions of this Court, both as to law and equity, is that the finding of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive on the court of appeals.  (p. 182.)

Appeal from Circuit Court, Monongalia County.

Suit by T. Jud McBee against S. S. Deusenberry.  Decree for plaintiff and defendant appeals.

*Affirmed.*

*Frank Cox*, for appellee.

*Thomas D. Stewart*, for appellant.

WOODS, JUDGE:

T. Jud McBee instituted his suit in the Circuit Court of Monongalia County praying for the rescission and cancellation of a certain deed for coal lands, on the ground of fraud. From a decree granting the relief prayed for, Deusenberry, the defendant, appeals.

The plaintiff alleged in his bill that S. S. Deusenberry and J. M. Deffenbaugh obtained title to a certain seam of coal in Preston County, by deed bearing date of August 18, 1920; that there had existed for a number of years an intimate and close friendship between Deusenberry and plaintiff, and that said Deusenberry had previously told plaintiff that he was trading in real estate and coal lands, and if he obtained anything that he thought good, he would take plaintiff in on the "ground floor" as he would like to see plaintiff make some money since his return from the war; that Deusenberry approached the plaintiff on August 22, 1920 for the purpose of selling him one-half of his interest, or a one-fourth in the coal above mentioned, and that he represented to the plaintiff that he would sell said one-fourth at exactly what he had paid for it—representing that he had paid about $400.00 an acre; that plaintiff had no general knowledge of the coal business and was unacquainted and without knowledge of the coal in question, its character, availability and value; that plaintiff had implicit confidence in defendant's integrity and judgment, and knowing him to be a man of large experience in buying and selling real estate and coal properties, believed that he would be justified in investing or purchasing said one-fourth interest in said coal and mining rights and privileges; that, relying upon said representations as to price, plaintiff agreed to pay the defendant $6,500.00; that he paid $1,625.00 down, and gave his three several notes in like amounts, payable in one, two and three years, respectively, in payment therefor; that defendant executed a deed to plaintiff for the said one-fourth interest on August 23, 1920; that plaintiff had paid the first of said notes; that he later found that the coal was of less value than he had paid for it; that in fact through defendant's representations he had paid twice the amount the defendant had paid for it; that defendant's statements were false, fraudulent and untrue; that defendant made the representations for the purpose of inducing plaintiff to purchase, and that plaintiff relied on said representations; that the plaintiff did not discover that said representations were false, fraudulent and untrue until shortly before the insti-

tution of this suit; that he is willing to return the property if defendant will return the purchase money already paid and deliver up the remaining two unpaid notes; and in the prayer asked that the said deed of August 23, 1920, be cancelled and rescinded and that the purchase money already paid by plaintiff be returned to him, with interest, and that the two unpaid purchase money notes for $1,625.00 each be returned to him, and for general relief.

The defendant filed an answer denying all the allegations in the bill in relation to any and all false and fraudulent transactions, statements and acts, in relation to the transaction, to which answer plaintiff replied generally, and on the issue thereon joined, proof was taken by both plaintiff and defendant.

The bill alleges every essential element necessary to set aside a transaction based on false and fraudulent representation. (1) It alleges that the representation was made; (2) that it was made in relation to a fact existing; (3) that the representation was false; (4) that the representation was material; (5) that the plaintiff relied on such representation and was induced thereby to purchase; and (6) that without such representation the plaintiff would not have purchased. The demurrer was properly overruled. *Wilt* v. *Crim*, 87 W. Va. 627; *Wamsley* v. *Currence*, 25 W. Va. 543; *Crislip* v. *Cain*, 19 W. Va. 438; *Allen* v. *Yeater*, 17 W. Va. 128; Pomeroy's Eq. Jur., sec. 910.

As tersely stated by the appellant in his brief, the whole case rests on the question of whether or not appellant did make false and fraudulent representations to appellee to induce him to purchase the interest in the coal and mining rights in question, conveyed by the deed of which cancellation is sought.

McBee says that Deusenberry told him that he was selling him the property at $400.00 per acre, which was the price that he had paid for it. It is admitted that the price appellant paid for the property was only $200.00 per acre. Deusenberry denies that he told McBee that he paid $400.00 per acre for it. McBee is corroborated by F. M. Lucas, who overheard a conversation between the plaintiff and defendant

at the Elks' Club in Morgantown, which conversation occurred "in the latter part of the Summer, and I think during the month of August, 1920," according to the witness. Lucas detailed this conversation as follows: "As well as I remember it, Mr. Deusenberry said to Mr. McBee that he had made a good buy; that he was turning the coal in to him at the price he had paid for it, and considered that he made a good buy." The defendant admitted that he made such a statement but stated that it referred to a piece of property adjoining the coal land in question for a right-of-way, and that it was made sometime after the time stated by Lucas. The defendant details the transaction in the following language: "Q. He (McBee) had never seen the coal? A. No, sir. Q. And you knew that? A. I did. Q. And you told him about it? A. Yes, sir. Q. Did he ask how thick it was? A. Never mentioned how thick it was or anything; never said anything about its thickness. Q. How much did you say there was of it? A. I told him there was 65 acres. Q. That is all you told him? A. I told him it was Upper Freeport coal—good coal—handy the railroad. I asked him to go and see it, and he said he wouldn't go. Q. Did he say your word was good enough? A. He did not say as to that; he said he would think it over until the next day. Q. And you priced it to him that day? A. I did. Q. And the next day he told you he would take it? A. Yes, sir. Q. And that is all that there was except making the deed? A. Yes, sir; then we walked right down to Allen's office, him and me, and ordered the deed made. Q. Now, Mr. Deusenberry, have you stated all the representations you made and all the conversations there were between you and Dr. McBee prior to that purchase of coal? A. That is all I can think of at the present time." From the defendant's own statement of the transaction it is clearly shown that the plaintiff acted on the representation of the defendant. The coal sold was located in another county of the state, and the deed by which Deusenberry had acquired title to the coal sold the plaintiff recited that it was for One Dollar and other valuable consideration. The appellant attempts to explain the haste in which the appellee acted in making his purchase,

by calling attention to the fact that the transaction was made when coal was bringing high prices, and coal properties were in great demand. It was at the peak of the post-war coal prices. Counsel for appellee stresses the fact of the intimate friendship between the two parties. That a statement from a friend upon whom one relies, as to the cost of an article or property, the value of which is unknown to the latter, accompanied by the further statement that such friend was offering the article or property, at cost, would be an inducement to buy. There are certain relations such as guardian and ward, trustee and cestui que trust and the like, where the law has always been that such confidence and influence will be inferred as raises a presumption against the validity of the transaction, and cast upon the party obtaining an advantage in it the burden of proving the entire fairness of the transaction. Mere friendship has never been classed among such relations. Still the intimate relation of friendship, as was alleged to exist between the plaintiff and defendant prior and at the time of the transaction in question, has high probative value when taken and considered, in connection with the other facts and circumstances, in determining whether reliance was placed by McBee in the representations made to him by Deusenberry, as to the value of the land. However, it is a two edged sword. Considering the high degree of friendship claimed to have existed between the two men, on the one hand, is it likely that Deusenberry would wilfully make the misrepresentation imputed to him, and upon the strength of which McBee claims to have relied and acted? On the other hand, if such representation has been proved to have been made, is it not reasonable to believe that the very intimate relation existing between the parties would lead McBee to implicitly believe that what his friend said was true? As against a friend, no one wears a shield of protection. Where representations made by others would demand investigation as to their truth, representations made by a friend would be relied on and accepted as true without question. This friendship between the two men would also lend support to the statement of McBee that Deusenberry had promised him to: "take him in on the ground floor."

As to the materiality of the representation claimed to have been made by the defendant to the plaintiff there is no question. There is no conflict but unanimity in the authorities that such representations are material when by the agreement the cost to the vendor is the criterion by which the price to the vendee is measured. The only cases holding that the representation as to cost is immaterial are those in which the representation of cost was made as an independent declaration, and not that the vendor was to sell at cost. The rule is stated in *Crislip* v. *Cain*, 19 W. Va. 438, that one of the most usual modes of establishing fraud is by proving a *suggestio falsi* or misrepresentation. This furnishes a ground for relief, when the misrepresentation is a matter of substance, that is, important to the interests of the other party, and in addition thereto it is shown that it actually did mislead him to his injury. In *Strickland* v. *Graybill*, 97 Va. 602, the court held that the representation by the vendor of a patent right that he had been offered a given sum for it is the statement of a material fact, as the chief element of its value is the readiness with which it may be sold. One to whom a representation is made as an inducement to enter into a contract, is entitled to rely upon it as true *quoad* the maker, and need make no further inquiry or investigation to determine the truth thereof. *Staker* v. *Reese*, 82 W. Va. 764; *Cerriglio* v. *Pettit*, 113 Va. 533. A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth. *Martin* v. *Hutton*, 90 Nebr. 34. ''There is no presumption of law that the representations made by parties dealing with each other in business transactions are false so as to require independent investigations to confirm them. Rather is it the rule that the party to whom the representation is made may believe the same to be true and act thereon, unless he has independent knowledge of its falsity. People having business transactions must understand that when they make statements or representations which induce others to deal with them, they must answer for the truth thereof.'' *Stout* v. *Martin*, 87 W. Va. 6. The testimony offered by both parties to show the

value of the property was widely divergent. J. B. Handford, a man of thirty years' experience in coal mining in many states, who was well acquainted with the Freeport coal in question, testified that the coal property conveyed to the plaintiff was practically without value.

Here was a man without experience in the coal business dealing with a man of large experience in buying and selling coal lands. It is only natural, in view of the friendship between them, that the former would be easily guided and controlled by the expressions of the latter as to what would be to his interest in a business deal concerning such properties. The Circuit Judge found on the whole case that the defendant misrepresented the property sold to the plaintiff, that such misrepresentation was material, and that the plaintiff relying upon it was misled to his injury. On these points the evidence was conflicting. While there is doubt about the matter, we feel that the finding of the learned chancellor on these points has evidence to sustain it. We cannot say such finding is against the weight of evidence. The rule established by the repeated decisions of this court, both as to law and equity, is that the finding of the circuit court as to facts in issue, unless against the plain preponderance of the evidence, is conclusive upon the court of appeals. *Weaver* v. *Akin,* 48 W. Va. 456; *Faulkner* v. *Grantham,* 55 W. Va. 317. We affirm the decree.

*Affirmed.*