J. S. DARST *v.* MINA Z. EVANS

(No. 7438)

Submitted February 14, 1933. Decided April 4, 1933.

(Rehearing denied June 8, 1933)

*England & Ritchie,* and *Frank P. Corbin,* for appellant.
*S. L. Flournoy,* for appellee.

WOODS, JUDGE:

The purpose of this suit is to enforce a vendor's lien upon real estate.

In 1922, the State Capitol Commission sold to J. S. Darst a brick-veneered dwelling located on land purchased by the state in the city of Charleston for the site of the new Capitol. He immediately removed the structure some 800 feet to its present location at 1714 Virginia Street. Early in March, 1923, defendant Mina Z. Evans, and her husband, W. H. Evans, at the instance of and accompanied by a real estate dealer of Charleston, inspected the property, then unoccupied, as prospective purchasers. They visited the premises a week later, accompanied by C. M. Agnew, and were conducted through the house by plaintiff, Darst, and his wife, who were residing therein. March 20th Evans entered into a written agreement with Darst for the purchase of the property, and by deed dated March 31st Darst and his wife conveyed the same to Mrs. Evans in consideration of $30,000, paid and to be paid as follows: $10,000 cash in hand, and the balance in two equal installments evidenced by two promissory notes of even date payable one and two years thereafter, and secured by a vendor's lien reserved in the deed.

Darst filed his bill herein at November Rules, 1928, praying for a sale of the property to satisfy a balance of the purchase price of $5,000. In her answer to the bill Mrs. Evans asserts that she is entitled to an abatement of the purchase price on account of alleged defects in the building, averring specially that after entering into preliminary negotiations with plaintiff

for the purchase of the property, she and her husband were informed that the building had been removed, whereupon, they became apprehensive of its conditions; that upon expressing their fears to plaintiff of the probability of its having been thereby greatly damaged and that it might be further injured by settling upon the new foundation, he repeatedly assured them that the house had not been damaged or weakened by its removal, and that the new foundation was adequate for the safe support of the building so that it would not crack, split or tear apart, or become weakened in any manner; that as a further inducement for her consummation of the purchase, defendant, by letter dated March 19, 1923, wrote her husband, who was acting for her in the transaction, that he (Darst) would be responsible for any damage to the dwelling caused by its removal, and that he would make all repairs thereto caused by its settling upon the new foundation; that she was induced to purchase the property solely because of the said representations and guaranty; and that by reason of the negligent and improper manner in which the building was moved and placed upon its present foundation, a short time after its purchase by defendant it began to settle and to split apart, thereby causing great damage to its general structure.

Exceptions to the answer were overruled, and the cause was referred to a commissioner in chancery to ascertain and report, among other things, (1) what representations, if any, were made by plaintiff to defendant concerning the condition and soundness of the house, and (2) what damage, if any, had been caused to the house by reason of its having been moved to its present location. After taking proof on the questions involved, the commissioner reported, in substance, (1) that while plaintiff may have stated to defendant and her husband that the house was perfectly sound, such statements did not "constitute representations within the meaning of the law of contracts," because of the impossibility of determining its true condition, and that any statement by Darst as to the soundness thereof would therefore necessarily constitute mere opinion, and (2) that the house had been damaged $1,200.00 by being moved, but that under the circumstances defendant was not entitled to any deduction from the unpaid purchase price. The trial court sustained exceptions interposed by defendant

to these findings, holding that she was entitled to an abatement of $2,500.00 from the purchase price for damage to the house resulting from the removal and settling on the new foundation, and rendering a decretal judgment for plaintiff in the sum of $3,318.94.

Testimony of witnesses for defendant: Mr. Evans testified that, having learned the house had been removed from the Capitol site, on his second visit to the premises he informed Darst that he was "afraid of a moved house", to which the latter replied that the building had not been damaged by removal, and that he would guarantee the foundation to be "absolutely sound"; that he relied on the statements and would not otherwise have purchased the property, although a careful examination made by him at the time revealed only "one or two" cracks in the plaster and none in the exterior walls of the building; that by letter dated March 19, 1923, Darst urged him to buy the house, stating, among other things: "I will make * * * repairs, if you have any doubt about the house not holding its shape, that would be necessary, caused by any settling of the house in a year, which certainly would develop in that time, if anything like that could possibly happen, which it could not, and I am not afraid of it for one minute"; that he and his wife have never lived in the house but have rented it to tenants since possession thereof was delivered by Darst to her, September 1, 1923; that he learned for the first time after employing a building contractor in April, 1928, to convert it into apartments, that there was a crack in east and west exterior walls extending from the foundation to the eaves; that in the course of the work it was discovered that the house was out of plumb, the water pipes strained at the joints, and the plaster cracked and loose from the lathing in many places; that the estimated remodeling cost of $3,500.00 amounted to $8,800.00 upon completion of the work; and that approximately $4,500.00 of the total expenditure was required to repair defects in the building caused by its removal.. On cross-examination he admitted that part of the damage to the plumbing had been caused by freezing, which made it necessary to replace water pipe in one of the bathrooms; and the fact that the house had been moved was considered by them in fixing the purchase price.

Mrs. Evans testified that she accompanied her husband on the visits to the house prior to the completion of the sale, but that he negotiated with plaintiff for its purchase; that the plaster and wall paper were cracked; and that when her husband expressed fear of the condition of the house because it had been moved, plaintiff, in her presence, guaranteed it to be "safe and sound".

C. M. Agnew testified that when he accompanied the Evanses to inspect the property prior to its purchase he noticed that the wall paper was in a "bad condition", and that the plaster contained cracks, but he saw none in the exterior walls of the house; that Evans, in his presence, told Darst that he was afraid that the cracks were caused by the removal of the house; that Darst, without commenting on the condition of the house, assured Evans that the cracks would be repaired. Herbert S. Kyle, an architect, testified that when he examined the house in April, 1928, at the instance of Evans, with a view to converting it into apartments, he discovered a crack in the southeast and northwest exterior walls, near the center, extending from the foundation $\frac{1}{2}$ to $\frac{3}{4}$ the height of the brick walls; that he also found the joints of water pipes strained, and the plaster on the interior walls loosened from the lathing; that this damage was due to the moving and placing the house on an improper foundation; and that it may further weaken. On cross-examination he admitted that if the building had been cracked by moving, the damage would have immediately appeared; and that the foundation had apparently not settled as it contained no cracks. E. S. McClure, a foreman who supervised the work of remodeling the building, testified that upon finding the plaster in a "very bad condition" (the plaster keys being broken) about $\frac{1}{3}$ to $\frac{1}{2}$ of it was removed; that much of the plaster on the first floor had to be removed because of its "loosened" condition; and that a crack in the wall of the front porch was also repaired. On cross-examination he stated that in his opinion the cracks in the building were caused by its settling on the foundation although there were no cracks therein or any evidence that it had settled. W. A. Abbitt, a building contractor, testified that when he was engaged by the Evanses in March, 1928, to remodel the house, he discovered cracks in the east and west exterior walls, and

cracked and loose plaster on the interior walls; that this damage could have resulted from improper moving or an inadequate foundation; that it cost about $2,000.00 to repair the defects in the house. On cross-examination he admitted that if the house had been damaged by moving the cracks would have appeared within a year; and that the defects could have been repaired for $1,200.00.

Testimony of witnesses for plaintiff: Plaintiff testified that the contractor who moved the house agreed to repair any damage caused by its removal, but it appearing to be in a "splendid condition" thereafter, he asserted no claim for damages; that he repeatedly assured Evans that the house was "solid and firm" on its foundation, remarking that "he (Evans) could see himself it had not been damaged in moving"; that he and his wife lived in the house until September 1, 1923, and that it was under his observation for two years after the sale to defendant, but he noticed no deterioration. On cross-examination he admitted telling the Evanses that he was of opinion that the building had not been damaged in removal, and that he guaranteed it was as "solid upon its new foundation as it was on its old." Mrs. Darst testified that she accompanied her husband and the Evanses when they inspected the house, but did not hear him tell, either of them that he would guarantee it to be "safe and sound", but he did tell them that the house was as "solid" on its present foundation as on the one from which it had been moved. B. E. Fisher, basing his testimony on twenty-five years of experience in house moving, stated that, generally, damages resulting from moving a house will appear immediately, and that he is of opinion defendant's house has not settled on the foundation. G. P. Jeffers, a building contractor, testified that he did some work on the building soon after its removal, but he saw no cracks in the plaster of the attic at that time; and that if the house had been strained in moving, the cracks would have appeared immediately. Arthur Horgan, a brick mason, testified that he made a thorough examination of the building in September, 1929, and found that the foundation had been constructed in a workmanlike manner, and undamaged. W. M. Wright, who had charge of the moving of the house, testified that he found no defects therein after its removal; and that if

it had been improperly moved, cracks would have appeared immediately in the plaster. Arthur Soupart, state superintendent of construction of buildings, testified that upon inspecting the dwelling in May, 1929, and finding no cracks in the walls of the foundation, he concluded that it had not settled; and that if the structure of the building had been strained in removal cracks immediately would have appeared in the walls. He is substantially corroborated by Walter F. Martens, an architect, who also examined the building.

It is apparent from the foregoing that the Evanses purchased upon the strength of Darst's representations as to soundness of the structure and his guaranty to make good all repairs needed within the year. The evidence strongly supports the chancellor's finding that the parties did not stand on equal footing. So, in view of the fact that the vendor undertook to speak with knowledge, he will be bound by his representations. 26 C. J. 1200; *McBee* v. *Deusenberry,* 99 W. Va. 176, 128 S. E. 378; *Engeman* v. *Taylor,* 46 W. Va. 669, 33 S. E. 922. The finding that defendants were entitled to an abatement in the amount of $2,500.00 is clearly within the evidence.

Counsel for plaintiff seek to overturn the decree on the ground that the commissioner had set the damage by moving at $1,200.00, and had refused an abatement because the purchase price took such into consideration. While a finding of fact by a commissioner is entitled to weight, it is not conclusive. *Thomas* v. *Collins,* 93 W. Va. 678, 681, 117 S. E. 489; *Highland* v. *Ice,* 75 W. Va. 513, 84 S. E. 252. The chancellor is privileged to disregard such finding, where it is not supported by the evidence. And while this Court, if acting instead of the chancellor, might have arrived at a different conclusion, on the record as a whole, yet, since we cannot say that the chancellor's finding is at variance with undisputed evidence or contrary to the plain preponderance of the whole evidence, we must affirm the decree. *Coffman* v. *Coffman,* 108 W. Va. 191, 150 S. E. 609; *Watson* v. *Linger,* 108 W. Va. 180, 150 S. E. 525; *Davis* v. *Davis Trust Co.,* 107 W. Va. 141, 147 S. E. 490; *Kincaid* v. *Evans,* 106 W. Va. 605; *McBee* v. *Deusenberry, supra.*

*Affirmed.*