# CHARLESTON

HIGHLAND, RECEIVER, v. ICE *et al.*

Submitted October 28, 1914. Decided January 19, 1915.

1. HUSBAND AND WIFE—*Agency—Powers of Agent.*
   A wife by permitting her husband to do business generally in her name may so hold him out as her agent as impliedly to authorize him to sign her name to notes for which she will be bound. (p. 514).

2. REFERENCE—*Finding of Fact—Conclusiveness.*
   A finding of fact by a commissioner, though entitled to weight, is not conclusive. If it is plainly not justified by the evidence, the court may set the same aside and decree according to its own view of the evidence. (p. 516).

Appeal from Circuit Court, Wetzel County.

Bill by Cecil B. Highland, receiver, against Emma M. Ice and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

*Wyatt & Ice,* and *Hogg & Hogg,* for appellants.

*John Ross, Jr.,* and *L. Carlin,* for appellee.

ROBINSON, PRESIDENT:

This appeal is from a decree foreclosing a mortgage, ordering a sale of the property for the payment of the liens found to be existing against the same. Though the mortgage is in form a deed, it is concededly shown, by a contemporaneous writing between the parties, to have been made for the purpose of securing a debt.

75 W. Va.

Emma M. Ice, who held the legal title to the property before it was mortgaged, complains that the decree takes her property for a debt of her husband, for which she is not now liable. In another particular, hereinafter to be adverted to, Lory F. Ice also complains of the decree.

That the mortgage, and the original note drawn therewith as representing the debt secured, were executed by Emma M. Ice together with her husband, P. A. Ice, now deceased, is admitted. But the note was several times renewed at the Bank of Smithfield to which it was payable, the last time on February 13, 1908. Emma M. Ice denies signing any renewal of the note, though each renewal purports to have been signed by her. She asserts, in argument but not in her pleadings, that as mortgagor of the property and maker of the note she was only surety for a debt of her husband, and that the taking of a renewal not signed by her, released her from the debt and likewise released the mortgage security On the other hand, the receiver of the bank, plaintiff in this suit, submits that Emma M. Ice was not surety for the husband; that P. A. Ice in whose handwriting the name of his wife appears on the renewals had authority from her to sign her name thereto; and that in any event, the bank not having relinquished the original note when the renewals were taken, those renewals, even of fraudulently palmed off on the bank as having been signed by Emma M. Ice, do not operate to discharge the original debt and security.

We have made a careful review of the record in this cause, aided by the excellent briefs of counsel. That review leads us firmly to the conclusion that Emma M. Ice was a joint and principal maker of the note and its renewals, and that the property is liable under the mortgage. The sum and substance of it all is that P. A. Ice was generally doing business in his wife's name, with her knowledge and by her authority. In the business so done he acquired in her name the property involved herein. In her name, she then signing in person, he mortgaged the same for debt. In her name he renewed the notes, signing her name thereto as was his general custom to sign it to notes and checks in managing the business. That he carried on an extensive business in her name, acquiring property, contracting debts, drawing checks, and doing all

things ordinarily necessary and incident to a business so carried on, that she was so cognizant of all this as to acquiesce in the same and become bound thereby, and that his agency for her had become so fixed and public in this particular that she can not now gainsay the same, is fully established by the record. Not until after the husband's death did she deny his general agency for her. Many an obligation signed by him for her she permitted to be paid as in due course. Now she seeks to retain the property acquired in connection with that business by denying any obligation for debts incident to the business. Equity can not countenance this. It may be, as she asserts, that she did not expressly authorize her husband to sign the renewal notes. But her course of business through him with this very bank, her acquiescence in and recognition of the husband's general agency in her behalf for a long period of time with the public generally, impliedly bind her as completely as any express authorization. She, living with him as wife, accepting title to property which he acquired by business conducted in her name, and knowing that he was operating in her name, as the proof abundantly shows, thus gave express recognition to his conducting business generally for her. From the authority so recognized, there followed implied authority in him to do all that was commensurate with conducting the business. Illustrative of the principle here involved the following quotations are pertinent: "If a person has, in the capacity of an agent for another, repeatedly drawn or accepted bills, or executed promissory notes for him, whether with or without authority, and the supposed principal has recognized or ratified the act of the agent, by payment of the bill or note, or in any other way; the principal will be bound by any subsequent exercise of authority of a like character, on the ground of estoppel." Tiedeman on Commercial Paper, sec. 79. "The power to make or endorse negotiable instruments may be implied as a necessary incident of powers expressly conferred. Where an entire business is placed under the management of an agent, the authority of the agent is presumed to be commensurate with the necessities of the situation. He has implied authority to do whatever is ordinarily incident to the conduct of such business, whatever is necessary to the

efficient execution of the duties, or whatever is customary in a particular trade." *Whitten* v. *Bank of Fincastle,* 100 Va. 546.

Clearly Emma M. Ice was principal in the debt evidenced by the renewal note, and the questions in relation to surety ship discussed in the briefs have no place in the case.

It is true that the commisssioner to whom the cause was referred found that the renewal notes were not authorized by Emma M. Ice. But that finding was clearly contrary to the weight of the evidence taken before him. The chancellor most properly sustained the exception to the report in this particular. We unhesitatingly approve his ruling. A finding of fact by a commissioner, though entitled to weight, is not conclusive. If it is plainly not justified by the evidence, the court may set the same aside and decree according to its own view of the evidence.

Some minor matters remain. We may well dispose of them briefly, and as follows:

An off-set is claimed against the bank by reason of a certificate of deposit issued to Catherine Ice and assigned to Emma M. Ice. But the proof is well nigh conclusive that the bank paid this certificate, as a lost one, and took a bond of indemnity to protect the bank in the premises. The chancellor properly ignored this claim.

Certain oil interests were conveyed by Emma M. Ice and P. A. Ice to I. D. Morgan as security for debt. After the death of P. A. Ice, the son, Lory F. Ice, with the knowledge and consent of his mother, paid the obligation to Morgan and took from him a conveyance of the title to the property. The decree sets aside this conveyance and subrogates Lory F. Ice to the original place of Morgan. It decrees Lory F. Ice, as against this property, the amount which he paid to Morgan. He joins in the appeal and says that he should have been placed first in priority instead of third. But the decree gives him exactly the priority which Morgan had, and is right. Two judgment liens underlie the Morgan debt.

Error is cross-assigned as to the allowance of any amount to Lory F. Ice. It is submitted that he is not entitled to subrogation. In good equity, under the circumstances of this case, we think he is.

The other cross-assignments must also be overruled.    It was certainly proper to refuse to allow the bank commission for collecting the rents of the mortgaged property, and charges for insurance on the property, since the mortgage writing made no provision entitling the mortgagee thereto.

Finding no error in the decree, we affirm it.

*Affirmed.*