THE WAYNE GAS COMPANY

*v.*

SOUTHERN W. VA. OIL & GAS CORP., *etc., et al.*

(No. 12265)

Submitted May 19, 1964.  Decided June 30, **1964.**

*Charles W. Ferguson, III, Robert E. Magnuson, Charles C. Wise, Jr.,* for appellant.

*William K. Napier,* for appellee.

BROWNING, JUDGE:

Plaintiff, Wayne Gas Company, instituted an action against the defendants, hereinafter referred to as "Lynn", alleging that, by virtue of a written contract dated July 18, 1939, Lynn agreed to furnish plaintiff, at its meter at Armilda, a sufficient supply of natural gas at all times to meet the requirements of plaintiff's business, such agreement to have priority over all other demands upon Lynn; that Lynn has failed to furnish sufficient gas to the Armilda meter and has sold gas to United Fuel, contrary to such agreement; and, that Lynn has an adequate supply of gas to meet plaintiff's requirements on Millers Fork but has refused to commit itself to furnish gas at any place other than the Armilda meter, concluding with a prayer that the contract be specifically enforced and that Lynn be enjoined from selling gas to United Fuel or anyone other than plaintiff until the needs of the Town of Wayne have been met.

Lynn answered, denying any failure to perform its obligations under the contract and asserting that it had sold to United Fuel only the residue of the gas not taken by plaintiff, attaching as an exhibit a copy of the contract of July 18, 1939, the pertinent portions of which are as follows:

> "WHEREAS, the party of the second part [plaintiff] is engaged in the business of supplying natural gas to the Town of Wayne. . . and desires to secure a supply of natural gas for said purpose from. . . [Lynn].
>
> ". . .
>
> "FIRST: . . . [Lynn] . . . agrees to furnish to . . . [plaintiff] at the measuring station at which gas is now being measured for delivery to the said Town of Wayne . . . a sufficient supply of natural gas at all times to meet the requirements of the business of . . . [plaintiff], to be by it distributed and sold to its consumers. . . .
>
> "SECOND: It is agreed that the obligation of . . . [Lynn] to furnish gas hereunder to . . . [plaintiff] shall be superior to all other obligations of . . . [Lynn] and that the demands of

. . . [plaintiff] shall have priority over all other demands upon . . . [Lynn].

". . .

"SIXTH: . . . [plaintiff] agrees that it will not hold . . . [Lynn] liable for any failure in the supply of gas under this contract, providing . . . [Lynn] has used due diligence to prevent such failure."

The case was referred to a commissioner in chancery to take, state and report upon the matters in dispute between the parties, before whom the plaintiff adduced the testimony of R. G. Prichard, President and Secretary-Treasurer of plaintiff. Mr. Prichard testified, on direct examination, in substance, that: in the five years preceding 1961, Lynn has never supplied an adequate amount of gas during the winter months; every year, "some area or another" of the territory served has been entirely without gas; and, from September, 1960, through March, 1961, the amount of gas sold by plaintiff to consumers has exceeded the amount received from Lynn through the Armilda meter (the measuring station specified in the contract). On cross-examination, Mr. Prichard admitted that: plaintiff also received gas from Lynn through a meter situated at Millers Fork, and other field meters; during the month of September, 1960, deliveries of gas from Lynn through the Armilda and Millers Fork meters exceeded the total sales to domestic and commercial customers in the Town of Wayne and vicinity, but the plaintiff has other customers; and, plaintiff has obtained gas from Lynn through Millers Fork, though not under contract, since 1955 or 1956, and has received exchange gas which Lynn has delivered into United Fuel lines, from United Fuel into the Armilda meter. On re-direct, Mr. Prichard testified that sales of gas in the Town of Wayne exceeded the amount of gas delivered by Lynn through the Armilda meter, exclusive of the exchange gas passed through United Fuel's lines. On re-cross, the witness admitted that the delivery figures did not include gas received from Lynn through Millers Fork, field meters or through United Fuel lines; that the shortage of gas in the Town of Wayne has existed since 1947; and that the Mil-

lers Fork meter was established at the instance of the Public Service Commission in order to alleviate the condition.

In its behalf, Lynn introduced testimony of Charles G. Krebs, a qualified petroleum and gas engineer, who had been employed by Lynn to make a study of its properties and the situation existing as regards plaintiff. Mr. Krebs inspected the properties; conducted open flow tests on the wells; calculated the capacities of Lynn's and plaintiff's transmission lines; determined deliveries by Lynn to plaintiff and United Fuel; and prepared charts and maps setting forth his findings, which were introduced into evidence. Mr. Krebs testified that: since 1940 the customers of plaintiff have almost tripled; Lynn has 37 producing wells, the open flow and rock pressure of which are constantly decreasing; of these 37 wells, 10 are connected to the Millers Fork meter, 14 to the Armilda meter and the remaining 13 can be fed into the Armilda meter through United Fuel lines; while Lynn's wells are sufficient to supply plaintiff's needs they are inadequate to furnish a peak hour or peak day supply of gas; only the residue or excess gas not taken by plaintiff is sold to United Fuel; Lynn receives the same price for gas from plaintiff and United Fuel; any lack of gas for the Town of Wayne is due to the inefficient transmission facilities of plaintiff; and it would be impractical and uneconomical for Lynn to further develop the field or to lay any new lines.

The commissioner found that plaintiff, ". . . during the cold weather months, is not receiving sufficient amounts of gas to supply their customers in and around the Town of Wayne; that it is a matter of fact that at times, during the cold weather months, the . . . [plaintiff] has NO SUPPLY (emphasis added) of gas to furnish their customers. . ." and that the relief prayed for in the complaint should be granted. The Circuit Court of Wayne County, by order of November 19, 1962, overruled Lynn's exceptions to the commissioner's report, and ordered Lynn to ". . . forthwith lay lines and do whatever work is necessary to deliver all the gas produced from . . .

[Lynn's] wells to the plaintiff at the present meter located at Armilda, said gas to be kept under the exclusive control of . . . [Lynn] until it is delivered to the plaintiff at said meter station, and . . . [Lynn is] hereby enjoined from selling any gas to any other person except the plaintiff until the pressure at said Armilda meter exceeds eighty pounds. .' ." and further ordered Lynn to use reasonable diligence to increase the supply of gas available to plaintiff, to which order this Court granted an appeal and supersedeas on July 8, 1963.

It is observed that the relationship between these parties was conceived in turmoil, grew to maturity in judicial controversy and almost certainly will be a victim of some kind of legalistic mortality. These conclusions appear not only from the record of this case but from the record of the case of *State ex rel. Public Service Commission* v. *Southern West Virginia Oil & Gas Corporation and The Star Gas Company*, 141 W. Va. 551, 91 S. E. 2d 737, which was decided by this Court on March 6, 1956. That was a proceeding in mandamus, the petitioner being the Public Service Commission and the respondents being the Southern West Virginia Oil and Gas Corporation and the Star Gas Company, a predecessor of Lynn. The petitioner in that proceeding sought a writ to compel respondents to comply with an order of the Commission directing the respondents to "connect its production system" at certain designated points "in order to deliver gas to meet the requirements of the Wayne Gas Company, and further to furnish said Wayne Gas Company with its gas requirements," after the construction of a four inch gas line by the Wayne Gas Company to a place where it would receive the gas from the respondents. This Court refused the writ upon the ground that a clear legal right had not been shown for its issuance and in the concluding paragraph of the opinion of the Court stated that "The denial of such writ is in no wise prejudicial to the suit in equity, or the declaratory judgment proceeding, pending in the Circuit Court of Wayne County. . . ." This significant statement appears in the opinion of that case: "In November, 1953, Wayne filed a complaint with

the Commission against Southern and Star, and the Commission found on October 25, 1954, that the supply of gas to Wayne had been insufficient to meet its requirements, but that Wayne's facilities were also inadequate, and ordered all parties to formulate plans to correct the situation." It is not clear to this Court from the record in the present case as to the outcome of litigation then pending in the Circuit Court of Wayne County or as to what transpired between that time and the institution of this action, but from a review of the records in both cases it is apparent that neither the petitioner nor Lynn has qualified for a merit award by its efforts to serve the residents of the Town of Wayne with the necessary gas to meet their minimum requirements. However, the sole responsibility of this Court is to affirm or reverse the final order of the Circuit Court of Wayne County entered on November 19, 1962, the pertinent portions of which have been heretofore quoted.

The order of the Circuit Court of Wayne County directed Lynn to lay lines and to do all other acts necessary for the delivery of all the gas produced from Lynn's wells to the plaintiff at the present meter located at Armilda, and to keep such gas under its exclusive control until the pressure at the Armilda meter exceeds eighty pounds. While it is true that the contract between the parties provides for delivery of gas to the plaintiff at the Armilda meter only, it is obvious from the testimony of the only witness offered by the plaintiff that by arrangement of the parties the plaintiff has been receiving gas from Lynn at other points. It is also apparent from that witness' testimony that the plaintiff has been receiving over a period of years gas from the United Fuel Gas Company line through an arragement between Lynn and United Fuel whereby such gas would be delivered to the plaintiff as necessary and that this arrangement has proved of benefit to the plaintiff. Mr. Prichard, the president of plaintiff, testified that since 1947 there had been a shortage of gas in the Town of Wayne and, as heretofore stated, that the Millers Fork field meter was established at the instance of the Public Service Commission, and that a sub-

stantial amount of the gas used by the plaintiff came from that source as well as from field meters. These questions were asked this witness and he made the following answers:

"Q. Lynn delivered more gas to you than you sold to your customers in Wayne. I merely want the Commissioner to get a true picture.

"A. Well, we have several other suppliers. I have other customers and if you want the total figures on input and output I'll have to get a different set of figures. The total to Wayne Gas Company at the Armilda meter station for twelve months is what I was asked for.

"Q. What I am trying to establish is simply this — that you were delivered by Lynn more gas than you sold to your customers that you listed here.

"A. No. I can't agree with your question. In September our total sales according to my figures, 8,547,000 was the total gas put in the Wayne system and out of that we we sold 3,441,000 in the town of Wayne. I don't know what you are trying to get to.

"Q. It is very simple. Just taking these two meters: Where does the gas go to that is delivered into the Mills (sic) Fork Line? It connects with Wayne?

"A. Yes.

"Q. And that gas is available for customers of Wayne?

"A. Yes.

"Q. The gas that comes into Armilda from Lynn goes into the Wayne Gas system?

"A. Yes.

"Q. And is available for customers of Wayne?

"A. Right.

"Q. And those two added together give a figure of four million, two thousand and some odd feet? You only sold your customers, by your own figures, 3,441,000 feet, so you had an excess

of almost a million cubic feet delivered to you by Lynn Gas Company. They delivered more gas than you sold to your customers in Wayne?

"A. Well, the two totals will come out that way. I don't know what they prove.

"Q. Then, to give a true picture to the Commissioner of the gas that Lynn had delivered to you for sales to your customers of Wayne we must take the gas that Lynn delivered to you and the sales to your customers of Wayne — is that correct?

"A. No, it's not correct so far as I'm concerned.

"Q. The gas is delivered to Armilda station with priority to the Wayne Gas Company?

"A. The field meter has nothing whatsoever to do with it, and any other deliveries, other than Armilda Station, so far as I'm concerned, are not in this thing.

"Q. How long have you been obtaining gas at Mills (sic) Fork meter?

"A. Well, I don't recall the exact date it was hooked up — probably 1955, maybe 1956.

". . .

"Q. Has not an arrangement been made and put in force and effect for many years that the Lynn gas that is placed in United Fuel lines can be taken out by you and used?

"A. There is no arrangement I know of. It has been permitted.

". . .

"Q. You have been doing that for several years?

"A. I just got through answering that. Wayne Gas Company has no physical, legal means of getting gas out of United. When they have the gas and we can get it, Lynn provides the arrangement and would transport it to our meter at Armilda Station."

The commissioner asked this witness this question and he made the following answer:

"Q. In other words, during the cold weather months, they are unable to supply you with enough gas for the town of Wayne and vicinity if they gave you all of it?

"A. Right, right — that's my belief."

The witness admitted that a representative of the Public Service Commission had "since 1947" made a study of the problem and suggestions as to its solution. Specifically, he was asked these question and made these answers thereto:

"Q. I believe that since 1947, since that date, there was a study conducted by the Public Service Commission of West Virginia over this situation, was there not?

"A. Mr. R. H. Leske, of the Public Service Commission, came down very briefly—he came to Wayne very superficially, I would say, and made some recommendations.

"Q. Other than the way that he did it, he did conduct an investigation, and he did make a report on this situation since 1947, did he not?

"A. I believe he did file a report.

"Q. That report was filed before the Public Service Commission and you were furnished a copy?

"A. Yes.

"Q. And in that report he made certain recommendations and field studies concerning this situation?

"A. It's a little vague in my recollection. Yes.

"Q. I'll ask you if this is Leske's report to the Public Service Commission on this project?

"A. I don't believe I'm qualified to say. I don't believe I ever saw it. All I got was an order from the Public Service Commission to Wayne Gas Company to do certain things. If I have ever seen this report, I don't recall. It may have been delivered to my attorney, but I don't recall seeing this paper before. This is new stuff to me."

694

Furthermore, the witness stated that the customers of Wayne Gas Company were not limited to the inhabitants of the Town of Wayne. He was asked these two questions and made the following answers thereto:

"Q. I'll ask you if any gas you obtained from Lynn Gas has been sold to others than the Town of Wayne?

"A. Only to the 52 Gas Company, which is another utility.

"Q. That is over, outside and above the contract you complain of here?

"A. Well, I suppose it would be out of the scope of the contract. Of course, we buy as much gas outside the contract as we get from Lynn, so I don't know what the pertinence of it is."

He further stated that in addition to the gas received from Lynn and indirectly from United Fuel Gas Company that Wayne Gas Company was purchasing gas from Crockett Gas Company, Industrial Gas Company, Webster, Libby-Owens, Irwin Gas Company, Ralph Kartley, Clifford Mills, Hassell No. 1, Southern West Virginia Oil and Gas, R. G. Prichard No. 1, Boyd Mathis No. 1, and Blue Stone Gas Company. After stating that not all of the gas received from these sources was under contract, he stated that "We have four gas sales contracts right now". From the testimony of this witness it cannot be ascertained what percentage of gas that had been used by the customers residing in the Town of Wayne came from Lynn Gas Company or some or all of the other suppliers of gas. Neither is it possible to ascertain from his testimony how much of the total gas purchased from all sources by Wayne Gas Company was sold to customers residing in the Town of Wayne or other customers "in the vicinity" of Wayne or at some more remote place or places.

The testimony of the witness Krebs, who testified for the respondents, is uncontradicted to the effect that, as heretofore stated, the customers of the plaintiff have tripled since 1940 while the wells of the plaintiff have diminished their output considerably; Lynn receives the

same price for gas sold to United Fuel as it receives from plaintiff and that any shortage of gas of the residents of the Town of Wayne is due to the inefficient transmission facilities of the plaintiff; and, it would be impracticable and uneconomical for Lynn to attempt to further develop the field or to lay new lines in an effort to increase the pressure at the Armilda station to eighty pounds at all times or even at peak periods of demand. In answer to a question this witness replied: "Under the present method of operation, Lynn does have sufficient gas, in my opinion, to supply the needs of the Town of Wayne. Any lack of gas supply for the town is due to obsolescent and inefficient transmission facilities that are now connected to Lynn's line by Wayne in transporting gas to customers of the town of Wayne."

Although the commissioner in his report found that the relief prayed for by the Wayne Gas Company should be granted, the following is an extract from his report:

"Your Commissioner in Chancery is of the opinion the following note is proper to be added to this report; that the situation confronting these parties is one that almost defies solution; that to maintain the status quo might be ruinous to the Wayne Gas Company because of the following:

"(1)  Loss of revenue

(2)  Excessive operating costs

(3)  Bad customer relations

(4)  Bankruptcy

"That to change the status quo and compel Lynn Gas Company to follow the terms of the agreement might result in the following:

"(1)  Too much gas pressure might blow up the lines of the Wayne Gas Company.

"(2)  Reduce Lynn Gas Company to just a storage facility for Wayne Gas Company.

"(3)  Destroy the arrangement, which the Defendant has with the United Fuel Gas Company for the use of their (United Fuel) 10 inch gas main or line.

"(4)  Bankruptcy."

"As a general rule, in order to entitle, plaintiff to a decree for specific performance, the facts essential to a recovery must be established by that high degree of proof which has variously been characterized by the terms 'clear', 'clear and convincing', 'clear and satisfactory', or other equivalent expressions. Although the right to relief must be established by a preponderance of the evidence, it has been held that proof by a mere preponderance of the evidence is insufficient, that the essential facts entitling plaintiff to relief must be shown by a clear and decided preponderance of the evidence, and that, if the proof is substantially evenly balanced, relief will be denied." 81 C.J.S., Specific Performance, § 142. See also, *Mullins* v. *Green,* 143 W. Va. 888, 105 S. E. 2d 542; *Harper* v. *Pauley,* 139 W. Va. 17, 81 S. E. 2d 728. This Court is unanimously of the view that the plaintiff failed to prove by a preponderance of the evidence the pertinent allegations in its complaint and that the decree of the Circuit Court of Wayne County directing specific performance of the contract between the parties is clearly wrong. Even if it be conceded that there is some conflict in the testimony of the witness Prichard and the witnesses who testified for the respondents, the decree is against the clear preponderance of the evidence. This is the third syllabus point of *Sturm, et al.* v. *City of St. Albans, et al.,* 138 W. Va. 911, 78 S. E. 2d 462: "A decree based on conflicting evidence will be reversed when it appears that it is contrary to the preponderance of the evidence or is clearly wrong." So well established in our jurisprudence is this rule of law that it is not necessary to cite extensive authority in support of it, although reference is made to the citation of cases in the opinion of the *Sturm* case which includes many decisions of this Court.

The decree of the Circuit Court of Wayne County is reversed and the case is remanded to that court for such further proceedings as may be indicated not inconsistent with the decision of this Court as expressed in its opinion.

*Reversed and remanded.*