K. C. BRAND, JR.

*v.*

LEON LOWTHER

*and*

REST HAVEN MEMORIAL GARDENS, INC.

(No. 14886)

Decided December 18, 1981.

*Wilson, Frame & Poling and Clark B. Frame* for appellants.

*Alfred R. Putnam* for appellee.

MCGRAW, JUSTICE:

This case comes to us on appeal from a judgment of the Circuit Court of Marion County which decreed specific

performance of a contract for the sale and conveyance of all of the capital stock and corporate assets of Rest Haven Memorial Gardens, Inc. The appellants, Leon Lowther and Rest Haven Memorial Gardens, contend that the case did not warrant a decree of specific performance and that the appellee, K. C. Brand, was guilty of laches. After a careful review of the record in this case we agree with the appellants' first contention and we reverse the judgment of the circuit court.

Leon Lowther is the president of Rest Haven Memorial Gardens, Inc. (Rest Haven), a West Virginia corporation engaged in the business of operating a cemetery on a tract of some eighteen acres of land south of the City of Fairmont. The sole stockholders in Rest Haven are Leon Lowther and his wife, Mary Lowther, who each own five of the ten outstanding and issued shares of capital stock in the corporation. K. C. Brand is the owner and operator of a business which sells and services tractors and manufactures portable storage buildings. On August 12, 1974, Mr. Lowther and his son, Leslie Lowther, went to Mr. Brand's place of business in order to make payment on a debt owned by Rest Haven for work done by Mr. Brand on cemetery equipment. The Internal Revenue Service had threatened to attach the bank accounts of Mr. Lowther and Rest Haven for the payment of taxes, and Mr. Lowther was attempting to pay off his creditors before this occurred. During the course of the discussion, Mr. Lowther brought up the possibility of selling the cemetery. After some discussion and a view of the property by Mr. Brand, Mr. Lowther agreed to sell the cemetery for his asking price of $80,000, after assuring Mr. Brand that he was able to sell the corporation. The parties returned to Mr. Brand's office and executed a written agreement for the sale of Rest Haven. Present at that time were Mr. Lowther, Leslie Lowther, and Mr. Brand and Mr. Brand's secretary.

The agreement of August 12, 1974, provided for the sale of all capital stock in Rest Haven by Mr. Lowther, and the transfer of all of the assets of the corporation, except equipment, including the land. The transfer was to be debt

free, with the seller paying all outstanding and accrued land, income and personal property taxes and all assets sold pre-need. The seller agreed that all pre-need merchandise would be on the property or installed at the time of the sale and the buyer agreed to handle the pre-need merchandise to customers. A $1,000 deposit was to be paid immediately and an installment of $10,000 was to be paid by August 18, 1974. The failure of the buyer to tender the $10,000 payment by August 18 would result in forfeiture of the $1,000 deposit. The further amount of $9,000 was to be paid at the time of the completion of the deal, not to exceed thirty to sixty days. The balance was to be paid in four equal installments at seven percent interest on the unpaid balance, and payment was to commence twelve months from the completion of the deal. The agreement was signed by Leon Lowther, individually, and by K. C. Brand, and bore an undated acknowledgement signed by Mr. Brand's attorney, who was not present when the document was executed.

On August 17, 1974, Mr. Lowther was contacted by Mr. Brand's attorney, who requested that the parties meet at his office to draw up a supplemental agreement and to pay the $10,000. At trial Mr. Lowther testified that the meeting took place late at night in the attorney's office and that the parties could not agree on the terms of the supplemental agreement. At that time he and Mr. Brand signed a blank sheet of paper with the understanding that Mr. Brand's attorney would have the terms of the supplemental agreement typed on the paper and send a copy of the agreement to Mr. Lowther. Mr. Lowther testified that he had never received a copy of this agreement. Mr. Brand testified that although his memory was somewhat hazy he seemed to recall that the meeting occurred during the daytime and that the agreement was typed, read through, and signed by all the parties in the attorney's office.

The supplemental agreement of August 17, 1974 provided that the sellers would pay all claims of the Internal Revenue Service for income or other taxes from the $11,000 already paid by the buyer. The agreement allowed the buyer access to the business property and records and the

right to deduct from the purchase price any payments made by the buyer to protect his investment. The closing of the sale was set for January 1, 1975 or after, and it was provided that Mr. Lowther would work for the buyer at a salary of $1,000 per month for a period of at least six months thereafter. Finally, the supplemental agreement provided that the transfer of assets to the buyer was to include the cemetery's perpetual care fund.[1] The agreement was signed by Leon Lowther, individually and as president of the corporation.

Apparently due to Mr. Lowther's problems with the Internal Revenue Service, no further action was taken on the contract until September 30, 1975. On that date Mr. Lowther approached Mr. Brand and informed him that he would need $2,100 to pay his obligation to the IRS. The parties entered into a second supplemental agreement acknowledging the receipt by the seller of the $2,100, and deducting that amount from the $9,000 to be paid at the time of the closing, which was set for January 2, 1976. Mr. Lowther testified that in the next several months he approached Mr. Brand on numerous occasions attempting to close the deal but that he was always put off by Mr. Brand, who stated that he would have to talk to his attorney.

On January 9, 1976, Mr. Brand and Mr. Lowther met once again to discuss closing the contract. At this time, however, a dispute arose as to the disposition of the perpetual care fund. It appeared that Rest Haven had borrowed some $7,150 from the perpetual care fund for corporate purposes and that this amount had not been returned to the fund. Mr. Lowther described the loan as an internal debt to be paid back at the rate of five percent

---

[1] A perpetual care fund or permanent endowment fund is authorized by statute, W.Va. Code 35-5-3 (1966), and permits the cemetery to spend the income from the fund for the purpose of beautifying and maintaining the cemetery. Provisions for the establishment and disposal of trust fund income and principle are contained in Articles 5 and 5A of Chapter 35 of the Code. In the case at bar the perpetual care fund was derived from ten percent of the sale price of the lots in the cemetery.

of the purchase price of each lot until the debt was paid in full. Mr. Lowther said he advised Mr. Brand of the loan from the perpetual care fund at the time the second supplemental agreement was entered into on September 30, 1975. Mr. Brand, on the other hand, asserts that the first he heard of this outstanding debt to the perpetual care fund was on January 9, 1976. Mr. Brand took the position that Mr. Lowther, who had contracted to transfer Rest Haven debt free, was obliged under the terms of the contract to replace the funds in the perpetual care fund and transfer that account intact. Mr. Lowther did not regard the debt as an outstanding debt but rather an internal debt of the corporation, and refused to replace the money, preferring instead that the fund be transferred as it was, and that Mr. Brand deduct the $7,150 from the last payment. The parties attempted for several months to resolve this obstacle to the closing of the sale, but were unable to do so.[2] On July 23, 1976, Mr. Brand filed a civil action in the Circuit Court of Marion County for specific performance of the contract. Trial was held on June 20, 1978, before a judge sitting without a jury, and on September 19, 1979, an order was entered granting the appellee's request for specific performance. It is from that order that the appellants now appeal.

The appellants assert that this action is not a proper case for a grant of specific performance because the contract was made in the absence of and without the knowledge or consent of, Mary Lowther, who was the owner of fifty percent of the capital stock of the corporation and was not made a party to the action in the circuit court. The appellants also assert that the contract in question was indefinite and incomplete in that it did not include essential elements of an enforceable contract of sale. Finally

---

[2] It appears from the record that at one time the parties were willing to split the amount of the trust fund, with Mr. Lowther paying half into the trust fund and transferring it to Mr. Brand who would then deduct the other half from the final payment of the purchase price. This compromise was not realized, however, when Mr. Brand's attorney informed him that the splitting of the fund might well be in violation of State law. *See* W.Va. Code 35-5A-3.

the appellants contend that the record as developed in this action shows the appellee to be guilty of laches and not entitled to the relief sought in the complaint. The appellee counters by arguing that the contract was sufficiently definite and complete to warrant specific performance and that appellant Lowther was acting as an agent for his wife in contracting to sell the stock of the corporation. The appellee does not address the question of laches.

Before addressing the specific issues raised by the parties, it is helpful to review the general law of the remedy of specific performance. The remedy of specific performance of a contract is not a matter of right in either party, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the case. *Gray v. Marino*, 138 W. Va. 585, 76 S.E.2d 585 (1953); *Lowther Oil Company v. Miller-Sibley Oil Co.*, 53 W. Va. 501, 44 S.E. 433 (1903); *West Virginia Oil and Oil Land Co. v. Vinal*, 14 W. Va. 637 (1879); *Abbott v. L'Hommedieu*, 10 W. Va. 677 (1877). *See also Hopkins v. Bryant*, 121 W. Va. 748, 6 S.E.2d 246 (1939). Specific performance is "an extraordinary act of grace on the part of the court, to be granted only where the plaintiff makes out his case fully, and there is not only no actual fraud or mistake, but there is no hardship or oppression, even though these do not amount to legal or equitable wrong." *Fultz v. Connelly*, 139 W. Va. 528, 534, 80 S.E.2d 438, 441 (1954). The right to specific performance of a contract must be established by a clear preponderance of the evidence. *Wayne Gas Co. v. Southern West Virginia Oil and Gas Corp.*, 148 W. Va. 685, 137 S.E.2d 219 (1964). *See also Mullins v. Green*, 143 W. Va. 888, 105 S.E.2d 542 (1958); *Harper v. Pauley*, 139 W. Va. 17, 81 S.E.2d 728 (1953).

To invoke this extraordinary equitable remedy, the complainant must prove a contract enforceable at law, and the performance granted must be the specific thing called for by the contract. *Robertson v. Gilbert*, 219 Va. 620, 249 S.E.2d 787 (1978). Generally courts of equity will decree specific performance when the contract is in writing, is certain and fair in all its terms, is free of fraud, misapprehension or mistake, is for an adequate consideration, and is capable of being performed. *Abbott v.*

*L'Hommedieu, supra. See also Harris v. Elliott,* 45 W. Va. 245, 32 S.E. 176 (1898); *Board v. Callihan,* 33 W. Va. 209, 10 S.E. 382 (1889).

Although specific performance will not ordinarily be ordered to require the transfer of personal property, equity will compel specific performance of a contract for the transfer of shares of stocks when they have a peculiar value to the party demanding the transfer, such as when they are incidental to the party's claim to the title of land, *Lathrop v. Columbia Collieries,* 70 W. Va. 58, 73 S.E. 299 (1911), or to some other unique property, *Bumgardner v. Leavitt,* 35 W. Va. 194, 13 S.E. 67 (1891), or where the purpose of the contract is to prevent control of the corporation by antagonistic interests. *Fanney v. Virginia Investment & Mortgage Corp.,* 200 Va. 642, 107 S.E.2d 414 (1959). Specific performance of a contract for the sale of shares of stock will also be decreed in a proper case where the stock is not readily purchaseable in the market or where its pecuniary value is uncertain or not easily ascertainable, as in the case of a closely held corporation. *Hoge v. Pollard,* 118 W. Va. 111, 188 S.E. 867 (1936); *Hubbard v. George,* 81 W. Va. 538, 94 S.E. 974 (1918). *See also Hogg v. McGuffin,* 67 W. Va. 456, 68 S.E. 41 (1910); *Fanney v. Virginia Investment & Mortgage Corp., supra; Kennerly v. Columbia Chemical Corp.,* 137 Va. 240, 119 S.E. 265 (1923).

Specific performance of a contract will not be decreed, however, where one of the parties cannot perform what is required of him without the consent of another who lawfully may and does withhold such consent. *Martin v. South Bluefield Land Co.,* 81 W. Va. 62, 94 S.E. 493 (1917); *Reid v. Allen,* 216 Va. 630, 221 S.E.2d 166 (1976). The refusal of specific performance for inability to perform has been held even where the party against whom the decree is sought has intentionally rendered himself unable to perform. *Jones v. Tunis,* 99 Va. 220, 37 S.E. 841 (1901). Thus, it has consistently been held in the Virginias since the passage of the statute permitting married women to acquire, own and dispose of property in her own right, 1868 W.Va. Acts, ch. 66; 1877 Va. Acts, ch. 265, that a husband who enters into a contract to sell property owned by his wife, or in

which she has an interest, cannot be compelled to specifically perform the contract where the wife refuses to consent to the conveyance. *Walter v. DeMoss*, 88 W. Va. 538 107 S.E. 289 (1921); *Neill v McClung*, 71 W. Va. 458, 76 S.E. 878 (1912); *T. Nevil Ingram Inc. v. Lunsford*, 216 Va. 785, 224 S.E.2d 129 (1976); *Aetna Ins. Co. v. Aston*, 123 Va. 327, 96 S.E. 772 (1918); *McCann v. Jones*, 40 Va. (1 Rob.) 256 (1842). Where, however, the person whose consent is required has knowledge of and acquiesces in the execution of the contract, that person may be estopped from denying his or her consent to the transaction. *Lusher v. Sparks*, 146 W. Va. 795, 122 S.E.2d 609 (1961). *See also Martin v. South Bluefield Land Co., supra.*

The record here clearly discloses that half of the stock of the cemetery corporation was owned by Mary Lowther, wife of Leon Lowther, in her own right. It is equally clear that Mary Lowther was not made a party to any of the written agreements between Mr. Lowther and Mr. Brand. The brief testimony of Mrs. Lowther at trial consists essentially of her assertion that her husband had not discussed the sale of the corporate stock with her prior to making the agreement with Mr. Brand and that Mr. Brand had never discussed it with her. Mr. Brand's own testimony indicates that while he and Mr. Lowther had discussions of the proposed transfer at Mr. Lowther's home on several occasions, Mrs. Lowther was never present and did not participate. The appellee chose not to cross-examine Mrs. Lowther and her assertions remain uncontradicted. There is not any evidence on the record which would indicate that Mrs. Lowther acquiesced or consented to her husband's promise to sell her stock in the corporation.

These facts clearly show the incapacity of Mr. Lowther and the corporation to effect the transfer of Mrs. Lowther's corporate stock to Mr. Brand. In such circumstances the grant of specific performance of the contract was clearly wrong and the judgment of the trial court must be reversed.

The appellee asserts, however, that Mr. Lowther was authorized by his wife to act as her agent in disposing of her shares of stock. He asserts that Mrs. Lowther "apparently is a housewife and all business of hers has been instrumented by her husband and for her best interests, welfare and benefits." The appellee cites the case of *Highland v. Ice*, 75 W. Va. 513, 84 S.E. 252 (1915), for the proposition that a wife, by permitting her husband to do business generally in her name, impliedly holds him out as her agent and may be bound by transactions he enters into in her name.

While we do not question that the above-cited case stands for the stated proposition, we do not believe that it has any applicability to the case at bar. In *Highland, supra*, the record clearly disclosed that the husband carried on extensive business in his wife's name, with her knowledge and by her authority. He acquired property, contracted debts and drew checks in his wife's name, and generally conducted himself in public as the manager of her affairs. The wife acquiesced in all of this activity, accepting title to property bought by her husband in her name and permitting debts signed by him for her to be paid as in due course. It was not until after her husband's death that she attempted to deny his agency. The implied agency was convincingly proven by the evidence on the record.

Here, however, there is no record evidence which would indicate that Mr. Lowther was authorized to act as his wife's agent. There is no presumption that an agency exists, and one is legally presumed to be acting for himself, not as the agent of another. *John W. Lohr Funeral Home, Inc. v. Hess & Eisenhardt Co.*, 152 W. Va. 723, 166 S.E.2d 141 (1969); *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W. Va. 622, 142 S.E.2d 898 (1965); *Raney v. Barnes Lumber Corp.*, 195 Va. 956, 81 S.E.2d 578 (1954). Nor does kinship or marital relation alone imply an agency. *Lusher Sparks, supra; Goff v. Lowe*, 101 W. Va. 57, 131 S.E. 870 (1926); *Raney v. Barnes Lumber Corp., supra*. When specific performance of a contract alleged to have been made with an agent is sought, the agency must be estab-

lished by clear, certain and specific proof. A bare preponderance of the evidence is not sufficient; the proof must be so clear and distinct that a fair and candid person can see without hesitation that the alleged authority was given. *Raney v. Barnes Lumber Corp., supra; Simmons v. Kramer,* 88 Va. 411, 13 S.E. 902 (1891). The proof must be equally clear and satisfactory to show ratification of the acts of the alleged agent by the alleged principal. *Raney v. Barnes Lumber Corp., supra. See Lusher v. Sparks, supra.* The burden of proving the agency rests upon him who alleges the existence of the agency. *Bluefield Supply Co. v. Frankel's Appliances, Inc., supra; Raney v. Barnes Lumber Corp., supra.*

The appellee here has failed to meet the burden of proving the alleged authority of Mr. Lowther to act as his wife's agent in selling her shares of stock. There is nothing on the record to indicate an express grant of authority. Nor are there any facts from which an agency can be implied. There is no evidence that Mrs. Lowther knew of the transaction or acquiesced in its execution. There is no evidence that Mr. Lowther, with his wife's consent, held himself out to be authorized to transact business in her name, other than his assertion to Mr. Brand that he was empowered to sell the corporation. While the evidence in this case may give rise to a cause of action for damages, there is insufficient evidence to support a decree of specific performance on a theory of agency.

Nor can it be argued that Mr. Lowther was empowered to sell the assets of the corporation by virtue of his position of president of the appellant corporation. The inherent powers of the president of a corporation by virtue of his office are very limited. *First National Bank of Wellsburg v. Kimberlands,* 16 W. Va. 555 (1880). There is no inherent authority in the president of a corporation to execute contracts on its behalf, especially where the contract is unusual or relates to transactions not constituting the usual business of the corporation. *MacGruder v. Hagen-Ratcliff & Co.,* 131 W. Va. 679, 50 S.E.2d 488 (1948); *Lewis, Hubbard & Co. v. Pugh,* 115 W. Va. 232, 174 S.E. 880 (1934); *Kelly Convertible Wagon Co. v. Rhodes Mfg. Co.,* 102 W. Va.

16, 135 S.E. 242 (1926); *Lawrence v. Montgomery Gas Co.*, 88 W. Va. 352, 106 S.E. 890 (1921); *Flanagan v. Flanagan Coal Co.*, 77 W. Va. 757, 88 S.E. 397 (1916); *Laing v. Price*, 75 W. Va. 192, 83 S.E. 497 (1914); *Varney and Evans v. Hutchinson Lumber & Mfg. Co.*, 70 W. Va. 169, 73 S.E. 321 (1911); *Third National Bank of Cumberland v. Laboringman's Mercantile & Mfg. Co.*, 56 W. Va. 446, 49 S.E. 544 (1904).

The sale of all, or substantially all, of the property and assets of a corporation is governed by statute. If the sale is in the regular course of the corporation's business, it may be made upon such terms and conditions as the board of directors authorizes. W.Va. Code § 31-1-120 (1975 Replacement Vol.). If, however, the sale is not in the regular course of business, a resolution of the board of directors recommending the sale must be submitted to the shareholders for a vote and must be approved by a majority of them. W.Va. Code § 31-1-121 (1975 Replacement Vol.). Here there is nothing on the record to indicate a meeting of the board of directors or the approval of a majority of the shareholders of Mr. Lowther's action in contracting to sell the assets of the corporation.

The appellant's second assignment of error is that the court erred in granting specific performance because the contract was incomplete and indefinite. Specifically, the appellants argue that the times for payment and other material terms were not included in the contract of sale. To warrant a grant of specific performance it must appear that all of the material terms of the agreement are settled and agreed upon and that no essential element of the contract is left open to future negotiation. *Hermann v. Goddard*, 82 W. Va. 520, 96 S.E. 792 (1918); *Roger v. McAllister*, 70 W. Va. 52, 73 S.E. 48 (1911); *Pickens v. Stout*, 67 W. Va. 422, 68 S.E. 354 (1910).

It is clear that the time and terms of payment of the purchase price are essential elements of a contract of sale and the failure to agree and distinctly state them is failure to agree upon any contract at all. *Hermann v. Goddard, supra; Edichal Bullion Co. v. Columbia Gold Mining Co.*, 87 Va. 641, 13 S.E. 100 (1891). *See also Pickens v. Stout, supra.* The terms of the contract here provided

that the balance of the purchase price was to be paid in four equal installments beginning twelve months from the date of the closing. Although it was not specifically stated in the written contract of sale, it is undisputed that both parties clearly understood this provision to mean that the installents were to be paid on a yearly basis. We will not hold the contract to be invalid on this ground. Similarly, the other terms the appellants claim to be essential elements omitted from the contract appear to have been either agreed upon by the parties or not so material as to provide grounds for a denial of specific performance had Mr. Lowther been capable of performing his promise. Consequently we conclude that the circuit court did not err in granting specific performance on this ground.

The final issue raised by the appellants is that the circuit court erred in granting specific performance because the appellee was guilty of laches. "Laches is delay which operates prejudicially to another person's rights. *Carter v. Carter*, 107 W. Va. 394, 148 S.E. 378 [1929]." Syl. pt. 1, *Bank of Marlinton v. McLaughlin*, 121 W. Va. 41, 1 S.E.2d 251 (1939). "Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right . . . ." Syl. pt. 3, in part, *Mundy v. Arcuri*, ____ W. Va. ____, 267 S.E.2d 454 (1980). *See also Lowther Oil Co. v. Miller-Sibley Oil Co.*, 53 W. Va. 501, 44 S.E. 433 (1903).

The first agreement entered into by these parties was executed on August 12, 1974 and suit for specific performance of the contract was not commenced until July 23, 1976. Mr. Lowther testified that he was ready and willing to close the sale during this period and estimated that the property had appreciated in value to the extent that it was worth three or four hundred thousand dollars at the time of trial. Ordinarily such a delay by the buyer in enforcing his rights would result in a denial of the specific performance sought, for the rule of laches is more strictly

applied in cases of this sort than in ordinary suits for accounts. *Bluestone Coal Co. v. Bell*, 38 W. Va. 297, 18 S.E. 493 (1893). *See also Abbott v. L'Hommedieu, supra*. It is equally clear, however, that at least from the date of the first agreement until September 30, 1975, when the final supplemental agreement was executed, Mr. Brand's delay in closing the transaction was due to Mr. Lowther's attempts to discharge the tax liability of the corporation, as he was required by the terms of the contract to do. Indeed Mr. Lowther acquiesced in the delay and asserts that he made no demand that the contract be concluded until after that date. Such a delay does not present a ground for refusing specific performance. *Beckett v. Kornegay*, 150 Va. 636, 143 S.E. 296 (1928).

Mr. Lowther testified that he did demand that the transaction be concluded after September 30, 1975, and was put off by Mr. Brand. On January 9, 1976, however, the parties began arguing over the transfer of the perpetual care fund, and Mr. Brand demanded that the sale be closed according to his interpretation of the contract. At this point neither party was willing to complete the transaction unless his terms were met. Thus, the only unjustified period of delay was between September 30, 1975 and January 9, 1976, a period of approximately three months. We do not think such a delay is so unreasonable as to justify the denial of specific performance in a proper case.

Moreover, Mr. Lowther has not demonstrated in what manner he was prejudiced by Mr. Brand's delay in completing the transaction during this period, other than to assert the increased value of the corporate property. Equity will not withhold its aid to enforce a contract merely because of the great appreciation of the property sold from causes unknown to and unforseen by each of the parties at the time the contract was made. *Cady v. Gale*, 5 W. Va. 547 (1871). The party asserting the defense of laches must show the prejudice resulting from the delay, otherwise the essential basis for the application of the doctrine of laches is non-existent. *See Bank of Marlinton v. McLaughlin, supra*. We find no unreasonable delay on the

part of Mr. Brand resulting in prejudice to Mr. Lowther and the corporation which would justify refusing a decree of specific performance.

One final issue which was not raised by the parties deserves our attention. A corollary to the rule regarding the denial of specific performance when one party contracts to sell a larger interest in property than he can make title to, is that equity may compel such party, at the suit of the vendee, to convey such estate or interest as he does have title to, with an abatement of the purchase price. *Neill v. McClung*, 71 W. Va. 458, 76 S.E. 878 (1912); *Lathrop v. Columbia Collieries Co.*, 70 W. Va. 58, 73 S.E. 299 (1911); *Cady v. Gale, supra; Hawks v. Sparks*, 204 Va. 717, 133 S.E.2d 536 (1963). Thus, as was noted in *Robinson v. Shepherd*, 137 Va. 687, 695, 120 S.E. 265, 267-268 (1923):

> [A] purchaser cannot have a partial interest forced upon him, yet if he entered into a contract, not knowing of the vendor's incapacity to convey him the whole, he is entitled to have the contract specifically performed as far as the purchaser is able, and to have an abatement of the purchase money for any deficiency in title, or quality, of the estate.

Cited in *Reid v. Allen*, 216 Va. 630, 633, 221 S.E.2d 166, 169 (1976).

In addition the purchaser may elect to sue for damages for breach of contract, for while incapacity to perform is an absolute defense against a suit for specific performance, it is not a defense to an action for damages. *Neill v. McClung, supra*. One may contract to sell that which he does not own at the time of contracting but he is answerable in a suit for damages for his subsequent inability to perform. *T. Nevil Ingram, Inc. v. Lunsford*, 216 Va. 785, 224 S.E.2d 129 (1976); *Jennings v. Realty Developers, Inc.*, 210 Va. 476, 171 S.E.2d 829 (1970).

Here, however, Mr. Brand sought neither partial performance of the contract nor damages for its breach. Consequently we must limit our holding to consideration of the relief actually prayed for. We conclude that the

appellee, K. C. Brand, was not entitled to specific performance of the contract of sale of Rest Haven Memorial Gardens, Inc., and we reverse the judgment of the Circuit Court of Marion County which ordered the appellants, Leon Lowther and Rest Haven Memorial Gardens, Inc. to specifically perform the contract.

*Reversed.*