787 S.E.2d 626

**ALLEGHENY COUNTRY FARMS, INC.,**
Plaintiff Below, Petitioner

v.

Darris HUFFMAN and Nuetulia
Huffman, Defendants Below,
Respondents

and

Allegheny Country Farms, Inc.,
Plaintiff Below, Petitioner

v.

Ethel Huffman Carper, Defendant
Below, Respondent

No. 14–1106, No. 15–0189

Supreme Court of Appeals of West Virginia.

Submitted: February 10, 2016

Filed: June 6, 2016

Jeffry A. Pritt, Esq., Pritt Law Firm, PLLC, Union, West Virginia, Attorney for Petitioner, Allegheny Country Farms, Inc.

John H. Bryan, Esq., Union, West Virginia, Attorney for Respondents, Darris Huffman and, Nuetulia Huffman.

Ethel Huffman Carper, pro se.

Workman, Justice:

In this consolidated appeal, Petitioner Allegheny Country Farms, Inc. ("Allegheny"), seeks specific performance of two contracts involving real property. Allegheny entered into the first contract with Respondent Ethel Huffman Carper ("Ms. Carper"), wherein she agreed to convey a portion of her property to Allegheny. Before the conveyance was made, however, Ms. Carper sold her property at auction to Respondents Darris and Nuetulia Huffman ("the Huffmans"). The second contract is a document the Huffmans executed at the time they purchased the property at

auction wherein they agreed to abide by the terms of the first contract.

Allegheny appeals the orders from the Circuit Court of Monroe County granting summary judgment to the Huffmans and dismissing as moot its action against Ms. Carper. Upon review of the parties' briefs, the appendix record, and oral argument, we find that the determinative issue before this Court is whether the Huffmans are contractually bound to convey a portion of their property to Allegheny. As explained below, we hold that they are. We therefore reverse the circuit court's order that granted summary judgment to the Huffmans, and remand for the entry of an order granting Allegheny's motion for summary judgment in Appeal No. 14–1106. Because Allegheny receives the relief it requested in the Huffman litigation, we dismiss as moot its appeal in the companion case, Appeal No. 15–0189.

## I. FACTUAL AND PROCEDURAL HISTORY

The underlying dispute regards two adjacent tracts of land in the Wolf Creek District of Monroe County, West Virginia. The first tract, the "Allegheny tract," is approximately thirty-four acres and is owned by Allegheny. The second tract, the "Huffman tract," is approximately thirty-three acres and is owned by the Huffmans.

The Huffman tract has been owned by various members of the Huffman family. This property was initially part of a larger fifty-eight-acre parent tract purchased by Alfred

Huffman in 1939. Alfred Huffman died testate in 1991 and his four children, Ethel Huffman Carper, Clifford Ray Huffman, Kyle J. Huffman, and Ralph D. Huffman (the "Huffman heirs"), succeeded him in ownership of the tract.[1]

The consolidated appeal before this Court involves the second and third lawsuits between the parties, detailed below.[2]

### A. Allegheny's Suit Against The Huffman Tract's Previous Owners

In June of 2006, Allegheny filed a "Complaint to Establish Boundary Line and for Declaratory Judgment" against the four Huffman heirs. Allegheny contended there was a dispute as to the boundary line separating its tract of land and the Huffman tract. In their Answer, the Huffman heirs generally denied the allegations in the complaint.

Following commencement of this litigation, the Huffman heirs partitioned their farm into four separate tracts in October of 2006, and Ms. Carper received approximately thirty-three acres.[3] Ms. Carper decided to sell her property at auction and the auction date was scheduled for November 18, 2006.

Allegheny wanted to acquire a portion of Ms. Carper's land, specifically, the strip of land between the boundary fence of the two properties and the Huffman Road, Route 7/7. If Allegheny secured this property, it could

1. In 1992, as part of the settlement of Alfred Huffman's estate, each of the Huffman heirs executed a notarized document which provided, in part, that he/she was in "agreement with my brothers and sisters that the land and property remain as it is on this date and that if I ever wish to sell my share of the land it be offered first to a member of the family before being sold to the public." This document was recorded in the Fiduciary Records and Settlement Records in the Monroe County Clerk's Office.

2. Soon after Allegheny acquired its tract of land in 1994, the Huffman heirs filed the first of three lawsuits over the parties' boundary line disputes. They sought a preliminary injunction against Allegheny regarding its use of West Virginia Route 7/7 ("Route 7/7," also known as the "Huffman Road") which the Huffman heirs contended was

a private road located solely on their land. Allegheny disagreed and maintained that its property bordered Route 7/7, a public road. In June of 1997, the circuit court granted a preliminary injunction to the Huffman heirs and found that Route 7/7 was located solely on the Huffman tract. At the time the 1994 action was concluded, the issue of whether the Huffman Road was a private or public road was not resolved. However, in the second lawsuit discussed below, Allegheny submitted a letter from the West Virginia Division of Highways confirming that the Huffman Road, Route 7/7 is a public road.

3. Ms. Carper's deed referenced the estate of Alfred D. Huffman, and "all prior instruments in the chain of title for all reservations, restrictions, and limitations pertaining to the real estate hereby conveyed[.]"

access its land directly from that road.[4] On November 14, 2006, Allegheny filed a notice of lis pendens regarding Ms. Carper's tract.[5]

On November 16, 2006, two days before Ms. Carper was scheduled to auction her property, Allegheny entered into a contract with Ms. Carper. This document is titled a "Settlement Agreement." In exchange for Allegheny's release of the notice of lis pendens, Ms. Carper agreed to designate the boundary line between the Huffman tract and Allegheny's tract as the "center of W.V[a]. Rt. 7/7—Huffman Road for the entire length of the boundary line between the subject tracts[.]" Allegheny agreed to pay for the cost of the survey and to pay Ms. Carper $1,000 when she executed a formal "Boundary Line Agreement," which would have the effect of conveying the strip of land at issue.[6] That same day, Allegheny executed a release of the notice of lis pendens.

The Boundary Line Agreement was not prepared before Ms. Carper sold her property at the real estate auction. At the auction held on November 18, 2006, the auctioneer announced that Ms. Carper's property was subject to "a basic right of refusal" for the Huffman family. The auctioneer also announced that the property was subject to Allegheny's contract with Ms. Carper and this contract was referenced in the written auction materials.

**4.** Allegheny's property is not landlocked; Allegheny has access to its property from another road.

**5.** A notice of lis pendens filed pursuant to West Virginia Code § 55–11–2 (2008) gives notice to prospective buyers that a property may be affected by litigation.

**6.** Specifically, the contract provided, in part, that
1. The boundary line between the tract or parcels of real estate owned by the parties ... shall be designated along the center of W.V[a]. Rt. 7/7—Huffman Road for the entire length of the boundary line between the subject tracts or parcels of real estate.
2. The parties shall execute a BOUNDARY LINE AGREEMENT to establish the boundary line as described in (continued ...) Paragraph No. 1 above, and the same shall be made of record....
3. [Allegheny] ... shall be responsible for the payment of the survey fees incurred for purposes of establishing the metes and bounds

Respondent Darris Huffman, the grandson of Alfred Huffman, signed a "Bidder's Registration" form at the auction, which provided in bold type: "Do not bid until you have read and agreed to be bound by the referred Contract and its addendums and the Terms of Bidding located in the Property Information Package." The cover sheet of the Property Information Package contained the following language: "The property will be offered by the existing boundary (minus any out sales or agreement with [Allegheny] )."

Darris Huffman and Nuetulia Huffman purchased Ms. Carper's property at the auction for $62,700. They tendered a $5,000 deposit and signed a "Contract for Sale of Real Property." The Contract for Sale provided that the deed was subject to "Rights of ways that may be created, any minor out sales or conveyances to or agreements with" Allegheny.

The survey, agreed to by Allegheny and Ms. Carper, was not completed by the date the Huffmans sought to close on the Huffman tract. However, Darris and Nuetulia Huffman signed a contract, titled an "Acknowledgement of Boundary Line Agreement," wherein they acknowledged that the property they agreed to purchase from Ms. Carper was

subject to that certain SETTLEMENT AGREEMENT entered into by and be-

of the agreed boundary line, and such survey shall be completed by J. Brad Smith....
4. [Ethel Huffman Carper] ... shall instruct her auctioneer to publically announce the location of the subject boundary line prior to the commencement of the auction of her tract or parcel of real estate as described herein, which said auction is scheduled for Saturday, November 18, 2006.
5. [Allegheny] ... shall pay unto [Ethel Huffman Carper] ... the sum of One Thousand Dollars ($1,000.00) upon the execution of the BOUNDARY LINE AGREEMENT....
6. [Allegheny] ... shall release of record the current Lis Pendens of record in the ... Clerk's Office ... on Thursday, November 16, 2006.
7. Upon the execution of the ... BOUNDARY LINE AGREEMENT, and the fulfillment of all other terms and conditions set forth herein, the parties shall execute a MUTUAL RELEASE....

tween Allegheny Country Farms, Inc. a West Virginia Corporation and Ethel Huffman Carper, dated November 16, 2006, wherein the parties thereto agreed to enter and execute a BOUNDARY LINE AGREEMENT in order to establish a boundary line between the tracts of real estate owned by Allegheny Country Farms, Inc. and Ethel Huffman Carper[.]

Important to our analysis, this contract further provided that

in consideration of the acquiescence of Allegheny Country Farms, Inc. with respect to the closing of the aforesaid transaction between ourselves and Ethel Huffman Carper, [Darris and Nuetulia Huffman] acknowledge that we will execute the BOUNDARY LINE AGREEMENT pursuant to the terms of the aforesaid SETTLEMENT AGREEMENT, at such time as the same is presented to us for execution by Allegheny Country Farms, Inc., after the metes and bounds for the same have been prepared.

A copy of the aforesaid SETTLEMENT AGREEMENT is attached hereto as Exhibit "A", and is incorporated herewith.

Ms. Carper conveyed her property to the Huffmans by deed on November 30, 2006. The deed expressly provided: "This property is subject to a Boundary Line Agreement, between Allegheny Country Farms, Inc., Ethel Carper, and Darris Huffman, which is to be prepared and executed either prior to or simultaneously with this transaction." Furthermore, the deed provided that it was made subject "to any reservations restrictions and limitations contained in prior deeds which constitute the chain of title to said real estate."

Approximately six months later, Allegheny obtained a formal survey which set forth a metes and bounds description of the property strip at issue. Thereafter, Allegheny pre-

pared its "Boundary Line Agreement." However, Allegheny was not successful in its attempts to have the Boundary Line Agreement executed by either Ms. Carper or the Huffmans.[7]

There was no activity in this case for years. After receiving the initial adverse ruling from the circuit court in the action against the Huffmans discussed below, Allegheny sought to enforce its contract with Ms. Carper. In July of 2014, Allegheny filed a "Plaintiff's Motion to Compel Enforcement of Settlement Agreement with Defendant Ethel Huffman Carper." By order entered January 27, 2015, the circuit court denied Allegheny's motion as moot based upon its ruling in the companion case below.

### B. Allegheny's Suit Against The Huffman Tract's Current Owners

In July of 2008, Allegheny filed a "Complaint to Enforce Settlement Agreement and for Injunctive Relief" against Darris and Nuetulia Huffman. The Huffmans admitted in their answer to the complaint that they agreed to execute a Boundary Line Agreement. However, they denied that Allegheny presented them with an "appropriate" Boundary Line Agreement.[8]

The circuit court ultimately held that Allegheny could not enforce the contract with the Huffmans because there was no privity of contract between them. The circuit court went on to hold that it would be inequitable to grant Allegheny's request for specific performance because it "slept on its rights" by (1) not drafting the Settlement Agreement with Ms. Carper to serve as a deed, (2) failing to ensure the survey and Boundary Line Agreement took effect before the sale, and (3) not purchasing the property at auction itself. The circuit court granted summary judgment in favor of the Huffmans by order entered December 17, 2014.[9]

---

7. In an Affidavit, Allegheny's President, Gregory H. Wittkamper, stated that he was prepared to tender $1,000 to Ms. Carper, and subsequently, to the Huffmans.

8. In its first order granting summary judgment to Allegheny, dated February 5, 2009, *see* note 9 *infra*, the circuit court held the Huffmans put forth no evidence to substantiate this claim.

9. This case took many disorderly detours before making its way to this Court. The circuit court originally granted Allegheny's motion for summary judgment by order entered February 5, 2009, and held:

Although the [Huffmans] have admitted being aware of the Settlement Agreement, and agreeing to sign a boundary agreement pre-

## II. STANDARD OF REVIEW

■ In Allegheny's lawsuit against the current owners of the Huffman tract, we are asked to review the circuit court's order granting summary judgment. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

■ In Allegheny's lawsuit against the previous owners of the Huffman tract, we are asked to review the circuit court's order dismissing the action as moot. "In general, this Court will apply a *de novo* standard of review to a circuit court's order granting a motion to dismiss. *See* Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." *Hicks v. Mani*, 230 W.Va. 9, 12, 736 S.E.2d 9, 12 (2012).

## III. DISCUSSION

■ Before addressing the issues raised by the parties, it is helpful to review the general law of the remedy of specific performance. In syllabus point two of *Gray v. Marino*, 138 W.Va. 585, 585, 76 S.E.2d 585, 587 (1953), this Court held: "Specific performance of a contract is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances of the case." *See generally Crafts v. Pitts*, 161 Wash.2d 16, 162 P.3d 382, 386 (2007) ("When a court's legal powers cannot adequately compensate a party's loss with money damages, then a court may use its broad equitable powers to compel a party to specifically perform its promise.") (quoting Restatement Second of Contracts § 360 (1981)).

■ To invoke this extraordinary equitable remedy, Allegheny must prove a contract enforceable at law, and the performance granted must be the specific thing called for by the contract. *Brand v. Lowther*, 168 W.Va. 726, 731, 285 S.E.2d 474, 479 (1981). We recognize that "the equitable remedy of specific performance is routinely awarded in contract actions involving real property, on the premise that each parcel of real property is unique (*see* 3 [Dan B.] Dobbs, *Law of Remedies* [Practitioner Treatise Series] § 12.11[3], at 299 [2d ed. 1993] )." *EMF Gen. Contracting Corp. v. Bisbee*, 6 A.D.3d 45, 52, 774 N.Y.S.2d 39 (N.Y. App. Div. 2004); *see also* 71 Am.Jur.2D *Specific Performance* § 11 (2016) ("[I]n the case of contracts for the sale of real estate, it is presumed by the courts that the remedy at law is inadequate, due to the nature of the subject matter, because no two parcels of real estate are the same."). Finally, the right to specific performance of a contract must be established by a clear preponderance of the evidence. *Wayne Gas Co. v. S.W.Va. Oil and Gas Corp.*, 148 W.Va. 685, 696, 137 S.E.2d 219, 225 (1964).

### A. Allegheny's Suit Against The Huffman Tract's Current Owners

In Appeal No. 14–1106, Allegheny raises three assignments of error. It argues the

---

pared pursuant to the Settlement Agreement, they object to some of the language in the boundary agreement presented to them by [Allegheny]. The [Huffmans] have not filed any pleading or affidavit asserting the line as surveyed by J. Brad Smith, is not at the centerline of W.Va. Secondary Route 7/7, and do not provide any evidence to indicate the centerline description contained in the proposed boundary line agreement is incorrect. The [Huffmans] have an affirmative duty to set forth specific facts showing there is a genuine issue for trial. The [Huffmans] have not presented any evidence, in the form [of] affidavits, or otherwise to prove that the description of the centerline of W.V[a]. Rt. 7/7—Huffman Road is incorrect and have therefore failed to meet their duty in responding to a motion for summary judgment.

Six months later, the Huffmans filed a "Motion for Reconsideration." Thereafter, the circuit court vacated its order granting summary judgment to Allegheny. The case then languished until both parties filed motions for summary judgment in 2013. The circuit court held a hearing on the motions and, by order entered September 19, 2014, granted summary judgment to the Huffmans on the grounds that (1) there was no privity of contract between Allegheny and the Huffmans, and (2) the agreement between Allegheny and Ms. Carper was an executory contract that could not be enforced upon the Huffmans. Allegheny responded by letter to the circuit court and asserted that the order failed to address Allegheny's argument regarding the contract the Huffmans signed when they purchased the Huffman tract at auction. On December 17, 2014, the circuit court sua sponte entered the revised order that is before this Court on appeal.

circuit court erred in denying specific performance on the grounds of lack of privity between Allegheny and the Huffmans and the unclean hands doctrine. Allegheny also maintains the circuit court's order violates public policy favoring the resolution of controversies by compromise or settlement.

■ Allegheny contests the circuit court's finding that there was no privity of contract between Allegheny and the Huffmans because the Huffmans were not part of the bargaining process for, or a party to, the Settlement Agreement entered into between Ms. Carper and Allegheny. Allegheny maintains that a copy of the Settlement Agreement was attached to, and expressly incorporated into, the Acknowledgement of Boundary Line Agreement signed by the Huffmans at the property auction. Therefore, Allegheny argues that the Huffmans clearly assented to the terms of the Settlement Agreement. We agree.

■ The circuit court ignored the dispositive question: whether the Huffmans are contractually bound to convey a portion of their property to Allegheny as outlined in the acknowledgement they signed at the property auction. In syllabus point five of *New v. GameStop, Inc.*, 232 W.Va. 564, 753 S.E.2d 62 (2013), this Court held:

> " 'A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.' *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 1." Syl. pt. 1, *Bennett v. Dove*, 166 W.Va. 772, 277 S.E.2d 617 (1981).

This principle resolves the case. Yet, the Huffmans do not address their contractual obligations in their brief before this Court. Instead, the Huffmans argue that the only effect of the acknowledgment they signed at the auction was to place them on notice of the Settlement Agreement. They assert this acknowledgment is irrelevant because Allegheny and Ms. Carper never executed the Boundary Line Agreement before the property was sold at auction. By not even acknowledging the existence of *their* contractual agreement to "execute the BOUNDARY LINE AGREEMENT pursuant to the terms of the ... SETTLEMENT AGREEMENT," the Huffmans fail to articulate a compelling reason why this document, which expresses the intent of the parties in plain and unambiguous language, should not be enforced.

Because the Huffmans expressly agreed to the terms of the Settlement Agreement when they purchased Ms. Carper's property at auction, we find Allegheny is entitled to have that written instrument enforced according to its plain and unambiguous language. The Huffmans entered into this contract, and its attending obligation to execute the Boundary Line Agreement, with their eyes wide open. They were clearly put on notice and assented to this requirement at the property auction.

■ We now turn to Allegheny's second assignment of error. Allegheny argues the circuit court erred in denying its action for specific performance based on the unclean hands doctrine. The circuit court based this ruling on its finding that the deed given to Ms. Carper by her siblings for the Huffman tract contained a pre-emptive option in favor of the Huffman family. Essentially the circuit court determined that Ms. Carper could not be bound by the Settlement Agreement because the agreement among the Huffman heirs created a pre-emptive right of first refusal, and she did not give notice before agreeing to convey a portion of her property to Allegheny. *See* Syl. Pt. 3, *John D. Stump & Assoc., Inc. v. Cunningham Mem'l Park, Inc.*, 187 W.Va. 438, 440, 419 S.E.2d 699, 701 (1992) ("The owner of property burdened by a pre-emptive right, also known as a right of first refusal, must, before selling such property to a third party, give written notice to the rightholder of the third party's offer and of the owner's intention to accept such offer. The rightholder is then required to advise the owner that he is willing to purchase the property on the same terms.").

■ Allegheny maintains the pre-emptive right agreement entered into by the Huffman heirs in 1992 would not impede enforcement of the contractual obligation of the Huffmans to execute the Boundary Line

Agreement. The Huffmans respond that the preemptive right to the Huffman tract was recorded to prevent any one of them from doing what Ms. Carper attempted to do with Allegheny—sell a portion of the original family farm to a third party to the detriment of other family members. They contend Allegheny had unclean hands because it had notice of the Huffman family's pre-emptive right but ignored that right when it entered into the Settlement Agreement with Ms. Carper.[10] Accordingly, the Huffmans "invoke the equitable maxim that a party who seeks equity must come with clean hands." *Province v. Province*, 196 W.Va. 473, 484, 473 S.E.2d 894, 905 (1996).

The Huffmans' argument regarding the pre-emptive right is unpersuasive and nothing more than a red herring. The pre-emptive right is not an impediment to their ability to convey title of the boundary strip to Allegheny. We note that the pre-emptive right was limited to that specific class of heirs living at the time of its execution. The agreement signed by the four heirs of Alfred Huffman provided: "I am in agreement with my brothers and sisters that the land and property remain as it is on this date and that if I ever wish to sell my share of the land it be offered first to a member of the family before being sold to the public." We reject the notion that the 1992 pre-emptive right stayed with the Huffman tract after Ms. Carper sold her property at auction; that interpretation would void the pre-emptive right altogether as an unlawful restraint against alienation in violation of the rule against perpetuities.[11] *See* W.Va. Code § 36–1A–1 (2011); *Firebaugh v. Whitehead*, 263 Va. 398, 559 S.E.2d 611, 615–16 (2002).

■ This Court addressed a similar family agreement in *Smith v. VanVoorhis*, 170 W.Va. 729, 296 S.E.2d 851 (1982), and found the agreement constituted a preemptive right. In syllabus point two of *Smith*, we held: "A pre-emptive right is a sufficient executory interest to make it subject to the rule against perpetuities." *Id.* at 730, 296 S.E.2d at 852. We reasoned that "[t]he right to purchase under the foregoing language is limited to the six existing parties who are all the heirs of Morton VanVoorhis. It does not extend to their heirs." *Id.* at 732, 296 S.E.2d at 854.

Consistent with *Smith*, we find that when Ms. Carper sold her property at auction, any pre-emptive right then existing was terminated. Therefore, the Huffmans cannot rely on this pre-emptive right to abscond from their contractual obligations to Allegheny. Any pre-emptive right which existed earlier does not affect Allegheny's right to specific performance from the Huffmans, since the disputed property strip was free from the pre-emptive right by the time the Boundary Line Agreement was presented to them.

■ Furthermore, the record reflects that Allegheny did not "sleep on its rights," but incurred costs to comply with its contractual obligations. Allegheny obtained a survey of the property strip at issue, prepared the Boundary Line Agreement, and submitted it to the Huffmans for their signatures. Allegheny also delivered a $1,000 check to its attorney to tender to the Huffmans upon its execution. These undisputed facts demonstrate that Allegheny substantially performed its contractual obligations and was willing and able to perform its remaining obligations. *See generally Schwinder v. Austin Bank of Chicago*, 348 Ill.App.3d 461, 284 Ill.Dec. 58, 809 N.E.2d 180, 195 (2004) (determining that "party will be entitled to specific performance of a contract for conveyances of real estate only upon establishing either that the party has performed according to the terms of the contract or that the party was ready, willing and able to perform but was prevented, and thus excused from doing so by the acts or conduct of the other party."). It bears emphasis that if the Huffmans had concerns with complying with the terms of the Settlement Agreement they should have

---

10. The Huffmans assert that Allegheny pressured an elderly lady into selling a portion of her property "behind the backs" of her family members. However, they presented no evidence below to support this serious allegation.

11. There is a strong argument that the pre-emptive right terminated when the Huffman heirs partitioned the parent tract. However, it is unnecessary for us to resolve that question in this appeal.

raised those concerns at the property auction, not after Allegheny went to the expense of conducting a survey and preparing the Boundary Line Agreement.

In light of the foregoing, we hold that Allegheny is entitled to summary judgment in its action for specific performance of the Acknowledgement of Boundary Line Agreement executed by the Huffmans.[12]

### B. Allegheny's Suit Against The Huffman Tract's Previous Owners

In Appeal No. 15–0189, Allegheny acknowledges that if the Acknowledgement of Boundary Line Dispute is enforced against the Huffmans, its appeal of the action—which started as a suit against the Huffman heirs, and turned into an action for specific performance against Ms. Carper—would be moot. We agree and dismiss this appeal as moot. *See* Syl. Pt. 5, *W.Va. Educ. Ass'n v. Consol. Pub. Ret. Bd.*, 194 W.Va. 501, 503, 460 S.E.2d 747, 749 (1995) (" 'Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court.' Syllabus Point 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908).").

### IV. CONCLUSION

For the reasons explained above, the December 17, 2014, order granting summary judgment to the Huffmans is reversed, and we remand for the entry of an order granting Allegheny's motion for summary judgment. Furthermore, we dismiss Allegheny's appeal in the companion case as moot.

Appeal No. 14–1106 Reversed and Remanded;

Appeal No. 15–0189 Dismissed as Moot.

---

12. We therefore do not reach the remainder of Allegheny's arguments.